Clarence Blagen FISH, Administrator with the Will Annexed of the Estate of Minnie C. Blagen, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 66–177.

United States District Court
D. Oregon.

Oct. 15, 1968.

Supplemental Opinion Jan. 14, 1969.

Frederick H. Torp, George H. Fraser, Milo E. Ormseth, Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., Robert Livingston, Edward Ord, Attys., Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for defendant.

## OPINION

BELLONI, District Judge.

This is an action under 28 U.S.C. § 1346 for the refund of federal estate taxes alleged by plaintiff to have been collected illegally and erroneously under the Internal Revenue laws of the United States.

Clarence G. Blagen died on May 28, 1951, leaving a will establishing a trust for the benefit of Minnie C. Blagen. It reads, in part:

### "ART. III

"All the rest, residue and remainder of my estate, of whatever nature and wherever situated, I give, devise, and bequeath to my wife, MINNIE C. BLAGEN, not for her own use and benefit, but in trust for the following use and purposes:

"1. My wife, Minnie C. Blagen, during her lifetime shall have the right in any calendar year to demand payment to her of all or any part of the net income of the trust for that year, but any income not so claimed by her within each calendar year shall at the close of such year be added to and become part of the corpus of my estate.

"2. Upon the death of my wife, Minnie C. Blagen, the trust fund, including all accrued, accumulated, and undistributed income, shall be distributed equally to my grandchildren * * * "

From the time of his death until July 13, 1960, the time of her death, Minnie Blagen failed to exercise her right to the yearly income from the trust. Consequently, at the end of each year the right to the income for that year was lost to her and became an addition to the corpus of Clarence Blagen's estate.

The disputed question here is whether the accumulated income earned by the trust in the years 1955 through 1959 [1] is subject to tax in Minnie Blagen's estate.

If the government's position that accumulated income of a trust is taxable is sustained, two further questions are presented: (1) Did the government allow the estate the proper amount of untaxable exemption? (2) Can the law taxing the accumulated income, passed after Clarence Blagen's death, apply to this estate without violating the due process clause of the Fifth Amendment?

## THE TAXABILITY OF LAPSED POWERS

The law is clear that Minnie Blagen's power to demand payment of the trust income to herself is designated by § 2041(b) (1), Internal Revenue Code of 1954, as a general power of appointment.[2] Ewing v. Rountree, 346 F.2d 471, 473 (6th Cir.1965); Townsend v. United States, 232 F.Supp. 219, 222 (E.D.Tex.1964); Phinney v. Kay, 275 F.2d 776, 781 (5th Cir.1960). But unless the power was released, the income for each year cannot be included in the taxable estate. Section 2041(a) (2), Internal Revenue Code of 1954.[3] Both

---

1. There was no income earned by the trust for the years 1951 through 1954, and there is no dispute for the year 1960.

2. 2041(b) (1):
"(1) *General power of appointment.*—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—* * * "

3. 2041(a) (2):
"(2) *Powers created after October 21, 1942.*—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned

parties agree that § 2041(b) (2) normally requires the conclusion that the lapsed power amounts to a release. Minnie Blagen's power to appoint the income from the trust lapsed at the end of each calendar year; she could no longer appoint that specific income for her own benefit. By allowing her power over the annual income to lapse, she released the power within the meaning of § 2041(b) (2). See Treas.Reg. 20.2041–3(a) (2) (ii) and (d) (1967).

Plaintiff freely admits all of the above, but argues that because Minnie Blagen was incompetent from 1953 through 1960, she was unable to exercise or release the power and that therefore her failure to act did not constitute an inter vivos release of the power under 2041(a) (2) and 2041(b) (2).

■ Judge Sheehy dealt with the problem of whether incompetence is material in determining estate tax liability in Townsend v. United States, 232 F. Supp. 219, at 221 (E.D.Tex.1964):

> "* * * if Mrs. Musgrove possessed the power of appointment at the time of her death and prior thereto, it is immaterial, under the provisions of said Section 2041(a) (2), whether she was physically or mentally capable of exercising such power."

It is not the manner in which a taxable power is exercised, but rather the existence of the power, that determines taxability. Hurd v. Commissioner, 160 F.2d 610 (1st Cir.1947).

Thus, there was a lapse of Minnie Blagen's general power of appointment, constituting a release under 2041(b) (2). Under 2041(a) (2) the released power is taxable if the release is by a "disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in decedent's gross estate under sections 2035 to 2038, inclusive." The parties concede that the property is includable in decedent's estate under § 2036[4] because the annual additions to the trust corpus resulting from the lapse of the power of appointment could be expected to benefit Minnie Blagen's financial position, since the swollen corpus begat additional income available to her the following year. Therefore, the accumulated income is taxable.

One factor should be noted in the interest of mitigating the seeming harshness of the result. Minnie Blagen possessed the general powers two years before she allegedly became incompetent. Under § 2041(a) (1), one can disclaim or renounce a power of appointment without its being deemed a release of such power. Minnie Blagen had two years from the time of her husband's death to the time of her alleged incompetency and had ample opportunity to take affirmative action to avoid taxability under this section.

---

by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."

4. 2036:
"(a) *General rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without refence to his death or for any period which does not in fact end before his death—
(1) the possession or enjoyment of, or the right to the income from, the property, or * * *"

## THE METHOD OF CALCULATING THE TAX

Since the accumulated income is taxable, is the basis to be used in computing the 5% exemption under 2041(b) (2) the value of the corpus of the trust or the value of the income alone?

The legislative history of § 2041 reveals that H.R. 2084, 82nd Cong., 1st Sess., U.S.Code Cong. & Admin.Service 1951, p. 1530, culminated in the Powers of Appointment Act of 1951 (Public Law No. 58, 82nd Cong., 1st Sess., U.S. Code Cong. & Admin.Service 1951, p. 89). The House Bill provided that any power which lapsed during the life of the individual possessing the power would not be deemed an exercise or release of such power. This blanket exclusion was recognized as an invitation to tax avoidance. (H.R. 327, Part 2, Minority, 82nd Cong., 1st Sess., pp. 6 and 7.) The Senate Finance Committee then inserted an amendment to the House Bill, which is now the language of 2041(b) (2).[5] The Senate Committee stated:

"An amendment by your committee modifies this latter provision so as to exempt from estate and gift tax *only limited amounts of property subject to lapsed powers*. The committee amendment provides an annual exemption with respect to lapsed powers equal to $5,000 or 5 percent of the trust or *fund in which the lapsed power existed,* whichever is the greater." (Emphasis added.) S.R. 382, June 4, 1951, 82nd Cong., 1st Sess., p. 7, U.S. Code Cong. & Admin.Service 1951, p. 1535.

The history of this section thus indicates an intent that the annual exemption be 5% of only that fund in which the power existed. The wording of 2041 (b) (2) strengthens this intent:

" * * * The preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the property, which could have been appointed by exercise of such lapsed powers, exceeded in value, at the time of such lapse, the greater of the following amounts:

(A) $5,000, or

(B) 5 percent of the aggregate value, at the time of such lapse, *of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could have been satisfied."* (Emphasis added.)

■ In this case Minnie Blagen had the power to appoint the annual trust income only; she had *no power to invade the trust corpus in any manner.* The trust income alone is the appointive property; therefore, it must form the basis on which to apply the 5% exemption. This view is substantiated by Rev.Rul. 66–80, IRB 1966–15, April 11, 1966; Bittiker, Federal Income, Estate and Gift Taxation (1961 ed.) p. 591; Warren and Surrey, Federal Estate and Gift Taxation (1961 ed.) p. 591.

The calculation of the exclusion must be based on each year's income. In 1955 the income was $32,337.97. The exclusion was $5,000 under 2041(b) (2) (A) ($5,000 being greater than 5% of $32,-337.97.) The increase in Minnie Blagen's gross estate was $27,337.97. Similarly, in 1956 the income was $11,153.81, the exclusion was $5,000, and the increase in the gross estate was $6,153.81. In 1957 the income was $17,815.18, the exclusion $5,000, and the increase in the gross estate $12,815.18. In 1958 the income was $26,954.13, the exclusion $5,-000, and the increase in the gross estate $21,954.13. In 1959 the income was

---

5. 2041(b) (2):

*"Lapse of power.* The lapse of a power of appointment created after October 12, 1942, during the life of the individual possessing the power shall be considered a release of such power. The preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the property, which could have been appointed by exercise of such lapsed powers, exceeded in value, at the time of such lapse, the greater of the following amounts:
(A) $5,000, or
(B) 5 percent of the aggregate value, at the time of such lapse, of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could have been satisfied."

$52,784.27, the exclusion $5,000, and the increase in the gross estate $47,784.27, thus making the total net increase to the gross estate $116,045.36. This is the amount includable in Minnie Blagen's gross estate for estate tax purposes.

## THE CONSTITUTIONALITY

Lastly, the plaintiff argues that 2041 cannot validly be applied under the circumstances of this case because it is unconstitutional to tax property which was subject to a power of appointment in effect before enactment of the Powers of Appointment Act of 1951.

■ Application of the Act was held to be constitutional in Ewing v. Rountree, 346 F.2d 471 (6th Cir.1965) under similar facts. In *Ewing* the husband died prior to the enactment, leaving powers of appointment to his wife, his widow died seven years after the Act became effective, and possessed the power at death. The dates of their deaths straddled the effective date of the Act. Here, Clarence Blagen died May 28, 1951 and the Powers of Appointment Act of 1951 was enacted one month later; Minnie Blagen died on July 14, 1960, possessing the powers. Even if Minnie Blagen was incompetent at death, she had ample opportunity to renounce the powers before her claimed incompetency arose in 1953. The taxing statute does not violate the due process clause of the Fifth Amendment. The plaintiff's argument is without merit.

The tax assessed is lawful. It was computed correctly. Judgment will be entered for the defendant.

### Supplemental Opinion

The opinion filed by this court on October 15, 1968, 291 F.Supp. 59, shall serve as Findings of Fact and Conclusions of Law pursuant to Rule 52(a) Fed.R.Civ. P. with the following addition:

Based upon a stipulated settlement between the parties pertaining to the tax liability for the year of 1960, the plaintiff is entitled to recover the sum of $2962.07 tax and $567.75 assessed interest, a total of $3,529.82, plus interest at 6% on this total from December 23, 1964.