Leo Francis **DOYLE**, Administrator d. b. n. c. t. a. of the Estate of Ethel B. McIlvaine, Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 69–916.

United States District Court, E. D. Pennsylvania.

March 30, 1973.

Daniel J. Ryan, Philadelphia, Pa., for plaintiff.

Warren Mulloy, Philadelphia, Pa., Robert M. Adler and David A. Wilson, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

■ This is a suit for recovery of U. S. Federal Estate taxes which plaintiff claims were illegally collected by defendant from plaintiff who is administrator d. b. n. c. t. a. of the estate of Ethel B. McIlvaine (decedent). Plaintiff seeks to recover the estate tax paid on the value of the corpus of a residuary trust established by decedent's husband in his will. The trust corpus was determined by the Internal Revenue Service to be includible in the decedent's gross estate because of a general power of appointment, within the meaning of 26 U.S.C. § 2041, the decedent was claimed to have by virtue of a power given her as a trustee to invade corpus. It is plaintiff's contention that (1) a general power of appointment did not exist since at the time of decedent's death there was no trust in existence, and (2) even if a general power of appointment did exist over the corpus of the trust, that power was limited by an ascertainable standard. The facts have been stipulated to by the parties, and this opinion represents our findings of fact and conclu-

sions of law as required by Fed.R.Civ.P. 52. Jurisdiction is specifically conferred by 28 U.S.C. § 1346(a)(1).

## I. FACTS

William S. McIlvaine (testator) died on May 13, 1959 leaving a Will dated November 2, 1949 and a Codicil thereto dated April 12, 1950. The Will and Codicil were admitted to probate on May 20, 1959, and letters testamentary were issued on the same date to the testator's widow, Ethel B. McIlvaine, the Fidelity-Philadelphia Trust Company, and an individual known as George E. Slaughter. In his Will, William S. McIlvaine established both a "marital" and a "non-marital" trust; the "non-marital" trust was of the residue of his estate, and was established as follows:

"*ITEM*: All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and character, and wheresoever situate at the time of my decease, I give, devise and bequeath unto my Trustees, hereinafter named, *IN TRUST, NEVERTHELESS*, to invest the same, and to keep the same invested, and to pay the net income derived therefrom quarter annually unto my wife, Ethel B. McIlvaine, for and during the full term of her natural life; and I authorize and empower my Trustees in the exercise of their uncontrolled discretion to also pay to my said wife, Ethel B. McIlvaine, such part or parts of the principal of said trust fund as may be necessary for her comfort, maintenance and support, or in the event of illness, accident or other case of necessity or emergency as the result of which she may be in need, or for her proper and reasonable funeral expenses in the event of the insufficiency of her individual estate for such purpose; and for the exercise of such discretion my said Trustees shall be without any liability or accountability whatsoever.

*And upon the death of my* said wife, Ethel B. McIlvaine, or upon my death, should my said wife predecease me, the then corpus or principal of my said residuary estate I give, devise and bequeath as follows, to wit:

*A full equal one-half* part or share thereof unto my brother, John W. McIlvaine, absolutely, if he be then living, and if he be then deceased, then as hereinafter provided for the remaining one-half thereof.

*And the remaining full* equal one-half part or share thereof, equally, share and share alike, absolutely, unto my nephew, Stewart Robinson, and my niece, Ruth Robinson Adams (children of my sister, Marguerite McIlvaine Robinson) or to the survivor of them, and to the issue of either of them who may then be deceased, such issue to take by representation, however, the share or shares his, her or their parent or parents would have taken if then living."

In addition to appointing the decedent as a co-executor of his estate, William S. McIlvaine also appointed the decedent as a co-trustee with Slaughter and the Fidelity-Philadelphia Trust Company of the two trusts established in his Will and Codicil thereto.

An account of the executors of William S. McIlvaine's estate, covering the period from May 15, 1959 to September 8, 1961 was called for audit in the Orphans' Court of Philadelphia County, Pennsylvania on November 6, 1961. On November 30, 1961 an Adjudication was filed confirming NISI the account, and awarding the balance of the estate to decedent, Slaughter and the Fidelity-Philadelphia Trust Company "in trust for the uses and purposes set forth in the Will." The Adjudication also granted the executors leave to make all necessary transfers and assignments and ordered that a Schedule of Distribution in conformity with the Adjudication be submitted to the Auditing Judge within ninety (90) days after the absolute confirmation of the account. The Adjudication of November 30, 1961 became final on December 15, 1961 pursuant to a Philadelphia

Orphans' Court rule. The Schedule of Distribution required by the Adjudication could not have been filed and would not have been accepted until the absolute confirmation of the Adjudication on December 15, 1961.

Ethel B. McIlvaine, the decedent, died on January 5, 1962. At the time of the decedent's death the Schedule of Distribution required by the Adjudication of her husband's estate had not been filed, and no transfer or assignment of the assets of her husband's estate to any trust or trustees had been made by the executors of that estate. Nor was the Schedule of Distribution ever filed. In subsequent proceedings in the Orphans' Court the Adjudication was opened and a Re-Adjudication was filed on October 4, 1962, which awarded the balance of residue directly to the remainderman of the residuary trust without the intervention of a trustee or a trust. In effect the trust established by William S. McIlvaine's Will and Codicil never came into existence.

On April 15, 1966, a deficiency in the estate tax in the amount of $30,085.77 together with interest of $3,762.48 (for a total of $33,848.25) was assessed against the decedent's estate. A timely claim for refund of the additional estate tax and interest thereon was filed on March 7, 1967. Plaintiff claims that the Internal Revenue Service erred in including in decedent's gross estate the residuary ("non-marital") trust created under the Will of her deceased husband, William S. McIlvaine.

## II. GENERAL POWER OF APPOINTMENT

Section 2041(a)(2) of the Internal Revenue Code of 1954, 26 U.S.C. provides for inclusion in the gross estate of a decedent the value of all property the extent to which the decedent "has at the time of his death a general power of appointment created after October 21, 1942." [1] Furthermore,

". . . the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."

A general power of appointment is defined, with exceptions not relevant to the instant issue before us, [2] as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." The Code does not provide a definition of a power of appointment. It is clear, however, that the term "includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment." 26 C.F.R. § 20.2041–1(b)(1).

Plaintiff contends that (1) there was no power of appointment in the decedent, and (2) there was no property subject to the power if a power did exist because the trust created in the testator's Will did not exist at the time of the decedent's death. Plaintiff reasons that the trust created by the testator's Will did not exist because at the time of the decedent's death the administration of testator's estate by his executors had not been completed. Since the trust did not exist, there could not have existed a

---

1. It is uncontested that the power in this case was created after October 21, 1942. See 26 U.S.C. § 2041(b)(3).

2. Since the decedent's co-trustees did not have a substantial adverse interest in the property subject to the power, it is of no consequence that the decedent could presumably act only with the consent of the co-trustees. See 26 U.S.C. § 2041(b)(1)(C)(ii).

304

power in the trustees to invade corpus. Therefore, a power to invade corpus held by the decedent in her capacity as trustee did not exist. Plaintiff further reasons that even if there was a power to invade corpus there was no property over which the power could be exercised because the executors of testator's estate had not transferred to the trustees of the trust prior to decedent's death the property intended to constitute the trust *res*. This they could not do, plaintiff argues, because the administration of testator's estate had not been complete.

Both these contentions are essentially variations on the same theme—that there did not exist a power of appointment at the time of the decedent's death. Neither argues against the existence of a general power of appointment assuming we find that a power of appointment did exist. Thus, assuming we conclude that the decedent had a power of appointment over the corpus of the non-marital trust by virtue of her power as trustee of the trust despite the failure of the trust to be established, it is clear that the power was a general power of appointment. As trustee of the trust, the decedent could pay to herself part or parts of the principal of the trust fund, i. e. the power to invade corpus was exercisable in her favor.

Plaintiff's contention that no property can be considered to be subject to a power, assuming a power to appoint did exist, rests on the notion that the property intended for the trust could not have been transferred by the executors to the trustees until the Schedule of Distribution was filed. This observation, however, does not effect the determination that property subject to a power of appointment which can be exercised in favor of the decedent is property subject to a general power of appointment. The entire argument by plaintiff that a trust did not exist since there was no property transferred to the trustees at the time of the decedent's death depends initially on the assumption that the existence of an operative trust (including the existence of a *res*), as opposed to the

existence of an interest in the trustees to invade corpus, is relevant to the question of inclusion under § 2041. A trustee under Pennsylvania law may not be able to invade the corpus of a trust at the behest of a beneficiary of the trust until the Schedule of Distribution has become final and the trustees are in receipt of the trust funds. But if it is only necessary under § 2041 that there exist property intended by the testator to constitute the corpus of a trust which when established can be used for the beneficiary, then there exists property over which there is a general power of appointment. The question, therefore, resolves to whether there existed in the decedent at the time of her death a power of appointment by virtue of her power as trustee to invade corpus even though the trust had not come into operative existence.

A decedent has a power of appointment if at the time of death (1) there exists an interest in property constituting control of the property, and (2) the interest exists in the decedent—that is, the interest must exist and the decedent must possess the interest. See generally, C.F.R. § 20.2041–3(a)(1) and (2)(i); 2 Mertens, Federal Estate & Gift Taxation § 19.11, p. 539 (1959). Whether an interest in property constituting control exists is a matter of state law. The well-established proposition of federal estate tax law was stated in Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80–81, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035 (1940):

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

See also, Jenkins v. United States, 428 F.2d 538, 547 (5 Cir.) cert. denied, 400

U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970); Peoples Trust Co. of Bergen County v. United States, 412 F.2d 1156, 1159 (3 Cir. 1969); Miller v. United States, 387 F.2d 866, 868 (3 Cir. 1968); Strite v. McGinnes, 330 F.2d 234, 238 (3 Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43 (1964); Citizens First Nat'l. Bank of Ridgewood v. United States, 288 F.Supp. 750, 753 (D.N.J. 1968); 2 Mertens, Law of Federal Gift & Estate Taxation § 19.08, pp. 515–517 (1959). Our first inquiry must, therefore, be whether Pennsylvania conditions the existence of an interest in a trustee to invade the corpus of a testamentary trust upon the actual establishment of the trust. It is clear that it does not.

Section 14(1) of the Wills Act of 1947, 20 P.S. § 180.14(1)[3] states:

> "In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:
>
> (1) Wills construed as if executed immediately before death. Every Will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator."

This section codifies the familiar rule that an interest in property established by a will takes effect at the time of the testator's death unless the testator expresses a contrary intent. See In re Metzgar's Estate, 395 Pa. 322, 148 A.2d 895 (1959); In re Kenin's Trust Estate, 343 Pa. 549, 23 A.2d 837 (1942). The existence of the interest held by the decedent in property is all that is necessary to determine taxability for estate tax purposes. In order that an interest in property subject to a trust exists it is not necessary under Pennsylvania law that the trustee have legal title to the property at the time of death,[4] nor is it necessary that there has been a transfer to the trustees of the trust property.

Unless otherwise provided by the will, the existence of an interest in property is not conditioned on the exercisability of the interest by the decedent at the time of her death. Thus, it is of no relevance to the existence of an interest in property held as a trustee that the trust was not established. This conclusion is compelled by the many cases that have determined that the existence of a power to appoint is not dependent on the capacity of the decedent to exercise the power. Fish v. United States, 432 F.2d 1278 (9 Cir. 1970), aff'g 291 F.Supp. 59 (D.Oregon 1968); Hurd v. Commissioner, 160 F.2d 610 (1 Cir. 1947); Townsend v. United States, 232 F.Supp. 219 (E.D.Tex.1964). See also Rev.Rul. 55–518, CB 1955–2, p. 384. These cases should be compared with the determination that a power is not includible when it is void under state law as violative of the Rule against Perpetuities. Estate of Edith Wilson Paul, 16 TC 743; 2 Mertens, Federal Gift & Estate Taxation § 19.11, p. 541 (1959), and with the exam-

---

3. This provision is identical to § 2541(1) of the recently enacted Probate, Estates and Fiduciaries Code, 20 Pa. S. § 2514 (1).

4. Plaintiff cites § 103 of the Fiduciaries Act of 1949, 20 P.S. § 320.103 as evidence that there did not exist a trust until the administration of testator's estate was complete. Section 103 states that "[l]egal title to all personal estate of a decedent shall pass at his death to his personal representatives, if any, as of the date of his death." This provision should be compared with § 104 of the same Act, 20 P.S. § 320.104 which states that "[l]egal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this act and lawfully by the will and to all orders of the court." If the person having legal title at the time of the decedent's death is determinative of the existence of a trust in Pennsylvania, it would seem to follow from plaintiff's reasoning that a trust, the corpus of which consists of real estate, would exist on the date of the decedent's death, but a trust consisting of personalty would not exist until administration was complete.

ples given in the Regulations of powers the existence of which are conditioned by the testator on a certain occurrence, 26 C.F.R. § 20. 2041–3(b). We, therefore, reject plaintiff's contention that there did not exist an interest to invade the corpus of the trust at the time of the decedent's death. We must consider, however, whether the interest existed in the decedent, i. e. whether she possessed the power conferred by the testator to invade the corpus of the trust.

 Unlike a "pre-1942 power to appoint" (a power created on or before October 21, 1942), which must have been exercised by the decedent, a "post-1942 power to appoint" (power created after October 21, 1942) need only be possessed by the decedent at the time of death to cause the property subject to the power to be includible in the decedent's gross estate for estate tax purposes. *Compare* 26 U.S.C. § 2041(a)(1) *with* § 2041(a)(2). The significance of conditioning the inclusion of property in the gross estate on mere possession of a general power of appointment is that there is removed from an analysis of taxability the need to ascertain the manner in which a power to appoint is exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate unless under state law the manner in which the power to appoint precludes exercisability in favor of the decedent, his creditors, his estate and the creditors of his estate. Thus, it is of no consequence to the possession of a general power to appoint that the power is not directly exercisable by the decedent as beneficiary of the testator's estate rather than indirectly exercisable as trustee with the power to invade corpus of a trust. "The Internal Revenue Code does not say that a power which is *not exercisable* directly in favor of the donee, his estate or the creditors of either is not a general power, but only that one so exercisable is." McCoid, The Nongeneral Power of Appointment—The Creature of the Power of Appointment Act of 1951, 7 Vand.L.Rev. 53 (1953). See also Strite v. McGinnes, 330 F.2d *supra* at

240; 2 Mertens, Federal Gift & Estate Taxation, § 19.14, p. 689, n. 25.5 (1970 Cumulative Supplement, Vol. 1). The reduction to the mere possession of a general power to appoint as the basis for inclusion in the gross estate of the property subject to the power was necessary to achieve Congress' purpose that the "test of taxability . . . [be] simple clear-cut, and easy to apply." Senate Finance Committee Report on the Power of Appointment Act of 1951, Sen.Rep.No.382, 82d Cong., 1st Sess. p. 2 U.S.Code Cong. & Admin.News, p. 1531. Therefore, the decedent possesses a general power of appointment if there exists an interest in property which on its face is exercisable in favor of the decedent, his creditors, his estate or the creditors of his estate unless under state law the manner in which the power to appoint could be exercised precludes exercisability to the four prohibited classes.

The manner in which under state law a power to appoint could be exercised totally precluded exercisability in favor of the decedent, his creditors, his estate and the creditors of his estate in the following case in which the Internal Revenue Service ruled at Rev.Rul. 54–153, 1954–1 C.B. 185:

"Where a trustee, who is also a beneficiary of a trust, is prevented by a State statute from participating in a decision to distribute corpus to himself, his estate, his creditors, or the creditors of his estate, no part of the trust property is includible in his gross estate under section 811(f)(2) [predecessor to § 2041(a)(2)] of the Internal Revenue Code by reason of the fact that the trust instrument provides that the trustees may distribute corpus to the beneficiary."

There exists no similar provision under Pennsylvania law. See Strite v. McGinnes, 330 F.2d supra at 240. Therefore, the interest in the decedent to invade the corpus of the trust established by the testator in his will was a general power of appointment possessed by the decedent at the time of her death

causing the property subject to the power to be included in her gross estate under § 2041(a)(2).

## III. ASCERTAINABLE STANDARD

Even though the decedent possessed a general power of appointment at the time of her death, § 2041(b)(1)(A) provides:

"A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

Plaintiff contends that the power possessed by the decedent is limited by an ascertainable standard relating to the "health, education, support or maintenance of the decedent."

The proper approach to resolving this question was set out in Strite v. McGinnes, *supra*. In *Strite* the court stated:

"We look . . . to the grant of power given to the decedent and determine whether it is clearly limited in its exercise to matters relating to health, education, support and maintenance. The initial step is to determine in light of local law, the interest conveyed to the decedent under this trust, i. e., the extent to which, consonant with the testamentary trust provision, the decedent could invade and consume the principal."

Strite v. McGinnes, 330 F.2d *supra* at 238–239. (citation to cases omitted.)

The trust language in the case *sub judice* provides that the Trustees are empowered "in the exercise of their uncontrolled discretion to also pay to my said wife, Ethel B. McIlvaine, such part or parts of the principal of said trust as may be necessary for her comfort, maintenance and support, or in the event of illness or emergency as the result of which she may be in need . . . ." Our task is to determine the "breadth of the power" given the decedent; it is of no consequence that the power given would be exercised, under the strictures of state law, in good faith. And the power conferred must be *clearly* limited in its exercise. It should also be noted that our task is considerably more difficult than that involved in *Strite*. In *Strite* the court was able to focus upon the use of the word "benefit" separately from the use of the word "comfort" in a grant which provided for the "benefit or comfort" of the decedent. Since the disjunctive was used by the testatrix in *Strite* and the court held that "benefit" was not an ascertainable standard, the court did not reach the question whether "comfort" was a sufficient limitation. See also Miller v. United States, *supra*. Furthermore, the court stated that the use of the word "comfort" presented a closer case.

In the grant before us we are faced with the use of the word "comfort" standing juxtaposed to words that are clearly limited by an ascertainable standard—"maintenance and support or in the event of illness, accident or other case of necessity or emergency as the result of which she may be in need." So, at least structurally, the word "comfort" relates to the words "maintenance and support." But, contrary to plaintiff's contention, this structural positioning of words is not determinative. We cannot agree with plaintiff that the mere positioning by the testator of the word "comfort" conjunctively with "maintenance and support" necessarily expresses the intention that "comfort" was used to modify "maintenance and support" producing the result that the grant in this case should be interpreted to read "comfortable maintenance" and "comfortable support". Whatever value there may be in myopically focusing on words in a grant, it seems more persuasive that the use of "comfort" was meant to express something in addition to "maintenance and support" and not merely to express the quantum of maintenance and support that should be made available to the decedent. Fortunately, we are not limit-

ed in our analysis to such semantical legerdemain. See Miller v. United States, 387 F.2d *supra* at 869 where it is stated: "An artificial rule of construction such as the doctrine of *ejusdem generis* has very limited application and is to be exercised with caution, and in any event is applicable to a will only where the intention of the testator is ambiguous." (footnotes omitted)

We are aided initially by the rule that when there is "indicia in the will itself that the decedent had been the main object of the [testator's] bounty . . . the power to invade principal should therefore be given its broadest meaning." Miller v. United States, 387 F.2d supra at 868. Strite v. McGinnes, 330 F.2d supra at 239 quoting the District Court's opinion 215 F.Supp. at 517. The decedent in our case was not only the main beneficiary but also potentially the only beneficiary of the testator's estate. The only limitation to achieving ownership of the entire estate was that applied to the invasion of trust corpus by the trustees of the "non-marital trust". Under the terms of the Will the decedent was given outright all personal ef-

fects of the testator. In addition, she was made the sole beneficiary of the "marital" trust.[5] Pursuant to the provisions of the "marital" trust, the decedent had, by her sole request without review by the trustees or any court, the power to invade the corpus of the "marital" trust "which she may require or demand, with full power and authority on her part to consume the entire principal." Furthermore, she could appoint the remainder of the corpus of the "marital" trust by will to whomever she chose to the exclusion of even the remainderman of the "non-marital" trust. Finally, only if there was corpus of the "non-marital" trust not consumed at the time of the decedent's death would anything go to the remainderman—the testator's brother and his niece and nephew or their issue. This conclusion is certain in view of the use of the word "then" in the remainder provision. It is evident that the remainderman would receive only the corpus remaining at the decedent's death. The bequest to the brother and niece and nephew was simply to provide against intestacy. Clearly, the decedent was the main object of the testator's bounty.

---

5. "*ITEM*: If my wife, Ethel B. McIlvaine, shall survive me, I give, devise and bequeath to my Trustees an amount equal to the maximum marital deduction which could be allowed under the Internal Revenue Code with respect to my entire estate, less the value of any property and interests in property qualifying for said marital deduction which pass or have already passed to my wife under any other provision of this Will, by operation of law, or otherwise. The gift made by this provision may be satisfied either in cash or in fee simple or absolute interests in property, or in a combination of both, as may be determined by my Executors. I direct my Trustees to hold said property *IN TRUST*, to keep the same invested, and to distribute the income therefrom quarter annually unto my wife, Ethel B. McIlvaine, for and during the full term of her natural life.

"*I do hereby order and direct* my said Trustees, at the sole request of my said wife, Ethel B. McIlvaine, to pay unto her from time to time, whatever part or parts of the principal of said trust fund which she may require or demand, with full power and authority on her part to consume the entire principal of said trust fund, should she so desire, and any such request or demand on her part for such principal or parts thereof, shall be without question or review by my said Trustees, or any Court or tribunal whatsoever, and her individual receipt therefor shall be a sufficient discharge and acquittance.

"*And upon the death of my* said wife, Ethel B. McIlvaine, I do further give, devise and bequeath the corpus or principal of said trust fund, or so much thereof as shall remain unconsumed, as aforesaid, unto such person or persons, and for such estates, or upon such trusts as my said wife, Ethel B. McIlvaine, may appoint by her last Will and Testament, and in default of such appointment, I do hereby order and direct that the corpus or principal of said trust fund, or so much thereof as shall remain unconsumed, as aforesaid, shall upon the death of my wife be added to and go as provided for my residuary estate."

With these two rules in mind—(1) that the power must be clearly limited, and (2) that the power must be given its broadest meaning and "good faith" exercise is not in the nature of a limitation on the breadth of the power—we proceed to determine under Pennsylvania law the "breadth of the power" conferred upon the decedent. See generally, Jenkins v. United States, *supra*; Peoples Trust Co. of Bergen County v. United States, *supra*; Miller v. United States, *supra*; Strite v. McGinnes, *supra*; Potter v. United States, 269 F. Supp. 545 (N.D.W.Va.1967); Stafford v. United States, 236 F.Supp. 132 (E.D. Wis.1964); Pittsfield National Bank v. United States, 181 F.Supp. 851 (D. Mass.1960); Estate of Jones v. Commissioner, 56 TC 35 (1971) aff'd 474 F.2d 1338 (3 Cir. 1973); Estate of Lanigan v. Commissioner, 45 TC 247 (1965); 2 Mertens, Federal Gift & Estate Taxation § 19.14, p. 548 (1959 and 1970 Cumulative Annual Supp. vol. 1).

Once again we refer to *Strite:*

"In Pennsylvania, the cardinal rule of construction is that the actual intent of the testator must prevail when it can be ascertained from the language of the will. Anderson's Estate, 243 Pa. 34, 89 A. 306 (1914); In re Keefer's Estate, 353 Pa. 281, 45 A.2d 31, 165 A.L.R. 1277 (1946). See Hoffman v. McGinnes, 277 F.2d 598 (3 Cir. 1960). This intention is to be discovered from a consideration of all the language in the four corners of the instrument, giving the words he employs their plain and ordinary meaning, except where the context in which they are used renders them a different denotation, or where legal or technical words are used and it is clear from their use that the legal or technical meaning was intended. Hoffman v. McGinnes, 277 F.2d 598 (3 Cir. 1960); Long's Estate, 270 Pa. 480, 113 A. 675 (1921); Metzgar's Estate, 395 Pa. 322, 148 A.2d 895 (1959); Collins Estate, 393 Pa. 195, 142 A.2d 178 (1958); Wright Estate, 380 Pa. 106, 110 A.2d 198 (1955);

Schellentrager v. Tradesmens National Bank & Trust Co., 370 Pa. 501, 88 A. 2d 773 (1952). 'Comfort', as considered in Zumbro v. Zumbro, 69 Pa.Super. 600, 603 (1918) embraces 'a variety of things. It is not limited solely to the necessaries of life, but may include things which bring ease, contentment or enjoyment.' It is something more than support, a 'minimum endurable standard of living.' Price v. Rothensies, 67 F.Supp. 591, 595 (E.D.Pa. 1946)."

Strite v. McGinnes, 330 F.2d *supra* at 239.

Unlike the testatrix's intent expressed in *Strite*, the testator's intent in the grant before us is not couched in precatory terms. The power given the trustees to invade corpus was unequivocal; it was not expressed as a mere wish by the testator. The trustees were empowered and authorized to exercise "uncontrolled discretion". Although the extent of the power may not be absolute, cf. Forrish v. Kennedy, 377 Pa. 370, 105 A.2d 67 (1954); a state court reviewing an invasion of trust corpus thought necessary by the trustees for the decedent's comfort would be hard-pressed to find a standard to limit that discretion without at the same time significantly impinging on the trustees' control. Since the decedent was the testator's main object of bounty, any invasion the trustees deem necessary which was rationally related to the decedent's comfort would certainly be sustainable. The use of the word "necessary" is not a significant limitation since it is the trustees who have the power to consider what is necessary for the decedent's comfort. Finally, we consider it clear from the will that the testator's use of the word "comfort" was to express an object for which invasion of corpus could be made that was in addition to the objects of "maintenance and support". It is inconceivable that a state court would limit invasion of corpus to the decedent's maintenance and support or even to her comfortable maintenance and comfortable support. Invasion of the corpus for the decedent's

"contentment or enjoyment" would pass muster under the grant in question.

Thus, it is our conclusion that the power to appoint was not limited to an ascertainable standard relating to the health, education, support, or maintenance of the decedent. Judgment will, therefore, be entered in favor of the defendant and against the plaintiff.