**Dorothy N. HUNTER, Executrix of the Estate of Samuel Knox Hunter, Jr., Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 82–2756.**

United States District Court, W.D. Pennsylvania.

Nov. 28, 1984.

William McC. Houston, Pittsburgh, Pa., for plaintiff.

Thomas A. Daley, Asst. U.S. Atty., Pittsburgh, Pa., Will E. McLeod, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

(1) This is a civil action seeking an estate tax refund in the amount of $44,138.97, plus interest. Jurisdiction is predicated on 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1). The parties have submitted a stipulation of facts and each has moved for summary judgment.

(2) Samuel Knox Hunter, Jr., died testate on October 17, 1978. A proper tax was paid on the undisputed portion of the estate, but not on the corpus of a trust created for decedent under the will of his mother, Stella T. Hunter. Contending that the corpus of the trust should have been included in decedent's gross estate, the Internal Revenue Service assessed a deficiency. Plaintiff paid the deficiency and filed a claim for refund, asserting that decedent was only an income beneficiary of the trust. The Internal Revenue Service denied the refund claim and plaintiff filed the instant action.

(3) The Stella T. Hunter will divided her residuary estate into three equal parts. She devised one part outright to decedent. Stella T. Hunter Will, § III(A). She created a trust with the remaining two parts, naming decedent and Mellon National Bank and Trust Company as co-trustees. Stella T. Hunter Will, § III(B). Within Item III(B), paragraph (a) directed the payment of income from the trust to decedent for life. Subparagraph (b)(1) of Item III(B) provided that upon the death of decedent, Samuel Knox Hunter, Jr., the trust estate was to be divided equally into two separate trusts. The net income from the first was to be paid to Dorothy Hunter, decedent's wife, until her death or remarriage. Stella T. Hunter Will, § III(B)(b)(2). The second half of the trust estate, as well as the

remainder interest from Dorothy Hunter's trust, was designated the "Residuary Trust." Stella T. Hunter Will, § III(B)(b)(1), (3). The Residuary Trust was to continue in separate trusts for Stella T. Hunter's grandchildren with distribution of principal at age thirty (30). Stella T. Hunter Will, § III(B)(b)(4)–(7).

(4) Subparagraph (b)(9) of Item III(B), the invasion clause, is crucial to the taxability of the corpus of the trust created for decedent in paragraph (a) of Item III(B). It provides as follows:

> If at any time the net income from any trust hereinabove established is inadequate for the comfortable support and maintenance of any beneficiary therein, or should any emergency arise, then and in such event my Trustees are authorized to pay to or use and expend for the benefit of any beneficiary so much of the corpus of the trust as in their sole and uncontrolled discretion may be deemed necessary for such purposes.

Stella T. Hunter Will, § III(B)(b)(9).

(5) The threshold issue is whether the invasion clause applies to the trust created for decedent in paragraph (a) of Item III(B) of the will. Is so, decedent had the power to invade principal in accordance with its terms and we must then decide whether the invasion clause constitutes a general power of appointment. 26 U.S.C. § 2041. If it does, the corpus of decedent's trust must be included in his gross estate and is subject to federal taxation.

I. *Does the Invasion Clause Apply to Decedent's Trust?*

(6) Plaintiff contends that the reference in subparagraph (b)(9), the invasion clause, to "any trust hereinabove established" does not include decedent's trust which is created in paragraph (a). Stella T. Hunter Will, §§ III(B)(a), III(B)(b)(9). According to plaintiff, basic principles of outlining preclude the application of subparagraphs under (b) to (a) because paragraphs (a) and (b) are parallel and equal in rank. Furthermore, asserts plaintiff, the capitalization pattern and distinct labels employed by the

scrivener isolate the decedent's trust from the invasion power.

(7) Under Pennsylvania law our task is to construe the will according to the intent of the testator. *Estate of Reynolds,* 494 Pa. 616, 627, 432 A.2d 158, 163 (1981). Absent ambiguity, that intent should be determined from the four corners of the will. *In re Blough's Estate,* 474 Pa. 177, 185, 378 A.2d 276, 280 (1977). As the Supreme Court of Pennsylvania stated in *Blough's Estate,* "The duty of the court is not to determine what the testator might or should have said in light of subsequent events but, rather, the actual meaning of the words used. (citations omitted) Only if the language employed by the testator is ambiguous should the court resort to canons of construction." *Id.*

(8) The reference in the invasion clause to "any trust hereinabove established" does not, on its face, appear limited to only those trusts established in paragraph (b) of Item III(B). The usual meaning of "hereinabove" is "above this or at a prior point in this writing or document." Webster's Third New International Dictionary (1961). However, the outlining scheme does introduce a degree of ambiguity.

(9) The scrivener employed considerably more precision when describing trusts in other provisions of the will. In subparagraph (b)(3) of Item III(B) "hereinabove" is used in conjunction with words of limitation: "the 'Residuary Trust' hereinabove referred to in Paragraph (b)(1)." Trusts are specified as follows in other numbered subparagraphs of (b): "each separate trust so set aside for each grandchild," "the trusts created under subparagraph (b)(4) above," and "any trust created or administered under this Item III." Stella T. Hunter Will, § III(B)(b)(5)–(8). The lack of any words of limitation modifying "any trust hereinabove established" in the invasion clause, § III(B)(b)(9), suggests that the testator intended "any trust hereinabove established" to mean *any* trust.

(10) Turning to the trust labelling and capitalization pattern, plaintiff asserts that

decedent's trust is referred to exclusively as the "Trust Estate." However, in subparagraph (b)(8) and paragraph (c) of Item III(B) the lower case "trust" is used to refer, in part, to decedent's trust. Even more damaging to plaintiff's argument, the scrivener frequently used "Trust Estates" in Item IV to refer to all trusts created under the will. Stella T. Hunter Will, § IV(2)–(5), (8). Rather than bolster plaintiff's position, the labeling and capitalization indicates that the will was not carefully drawn, casting doubt on the wisdom of placing too much emphasis on outline structure.

(11) Extrinsic factors do not aid interpretation. Stella Hunter knew that her son had considerable financial resources at the time she executed her will, suggesting perhaps that she would not find it necessary to grant him invasion power. Stipulation of Facts No. 9. Conversely, Stella's great concern for her son indicates that Stella would desire to grant invasion power to decedent in an emergency. Stipulation of Facts No. 7. We find that these extrinsic factors, being highly speculative, shed little light on a proper interpretation of the will.

(12) We believe that the reference in the invasion clause to "any trust hereinabove established" must be given its plain meaning. Consequently, the invasion clause, § III(B)(b)(9), does apply to decedent's trust created in § III(B)(a). We hold that decedent possessed the power to consume the corpus of his income trust according to the terms of the invasion clause.

## II. *Does the Decedent's Invasion Power Constitute a General Power of Appointment?*

(13) If decedent's power to consume principal, as limited by the invasion clause, constituted a "general power of appointment," the principal or corpus of the trust is includible in his gross estate and subject to federal estate tax. 26 U.S.C. § 2041(a)(2). Section 2041 defines a "general power of appointment" as follows:

(1) *General power of appointment* —The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

26 U.S.C. § 2041(b)(1)(A).

(14) The extent of decedent's power over the trust corpus must be determined by Pennsylvania law. *Miller v. United States*, 387 F.2d 866, 868 (3d Cir. 1968). Decedent's failure to exercise the power during his lifetime is irrelevant to this inquiry. Once the boundaries of the power are defined, the taxability of the interest is governed by federal law. *Id.*

(15) The issue here is whether the grant of power to decedent in the invasion clause is "limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent." 26 U.S.C. § 2041(b)(1)(A). Defendant concedes that power to invade for "comfortable support and maintenance" constitutes such an ascertainable standard and thus creates no general power of appointment. The dispute focuses on whether power to consume "should an emergency arise" is related to health, education, support or maintenance.

(16) Defendant contends that *In re Dobbin's Estate*, 148 Pa.Super. 177, 24 A.2d 641 (1942), is dispositive of the meaning of "emergency" in Pennsylvania. In *Dobbin's Estate* the testator granted his daughter, the income beneficiary of the trust, a personal right to invade corpus "in the event of an emergency." The court permitted invasion when the beneficiary needed funds to prevent foreclosure upon one of her apartment houses. *Id.* at 181–82, 24 A.2d at 643–44. Noting that the invasion clause did not limit "emergency" to any particular character or kind, the court found the clause "operative in any pressing situation, personal to the donee,

which the payment of money will relieve." *Id.* at 180, 24 A.2d at 643. This interpretation of "emergency" appears to go beyond the confines of health, education, support and maintenance.

■ (17) We are not bound to apply *Dobbin's Estate.* The Pennsylvania Supreme Court has never considered the extent of power granted by authority to invade principal in an "emergency." While we must give "proper regard" to the rulings of lower state courts, we are, in effect, sitting as a state court and must apply state law as we find it. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

(18) The vitality of *Dobbin's Estate,* a 42-year-old precedent, is questionable today. The Superior Court's interpretation of "emergency" was influenced in part by knowledge that the remainderman was a corporate charity. The court noted that a will should be interpreted in favor of heirs or next of kin. *Dobbin's Estate, supra,* 148 Pa.Super. at 180, 24 A.2d at 643. Also, the testator's restriction on withdrawals from principal to $2000 per year may have lessened the court's concern that allowing invasion could lead to a dissipation of principal. *Id.* at 181, 24 A.2d at 643. Finally, our research discloses that *Dobbin's Estate* has never been cited by any court. We find *Dobbin's Estate* unpersuasive and we conclude that the Pennsylvania Supreme Court would not follow the decision today.

(19) The Pennsylvania Supreme Court construed the word "emergency" in *Scaccia v. Old Forge Borough,* 373 Pa. 161, 163, 94 A.2d 563, 564 (1953):

It is difficult to define an emergency, but as a generalization it is a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate or quick action. [cites omitted] Ordinary conditions or customarily existing conditions are not emergencies.

Although the facts of *Scaccia* are unrelated to the present case, the Pennsylvania Supreme Court made clear that "emergen-cies," within its understanding, are "dangerous" situations. This suggests a narrower construction of the term than the Superior Court employed in *Dobbin's Estate;* foreclosure upon a real estate holding, not one's primary residence, cannot be considered dangerous.

■ (20) Having examined the meaning of "emergency" under Pennsylvania law, we must consider federal law to determine whether the term "emergency" limits invasion power sufficiently to constitute an ascertainable standard relating to health, education, support or maintenance. 26 U.S.C. § 2041(b)(1)(A). We are mindful that the Court of Appeals has held that the grant of power to a decedent must be "clearly limited" in its exercise to matters relating to health, education, support or maintenance in order to avoid taxation. *Strite v. McGinnes,* 330 F.2d 234, 238 (3d Cir.1964).

(21) The Treasury Regulations illuminate the meaning of the standard set forth in § 2041(b)(1)(A):

A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's "support," "support in reasonable comfort," "maintenance in health and reasonable comfort," "support in his accustomed manner of living" ...

Treas.Reg. § 20.2041–1(c)(2) (1984). Note that the regulations require only that "emergency" be "reasonably measurable" in terms of health or support. More importantly, "support" can mean "support in his accustomed manner of living." Allowing

**1298**

invasion in order to support the beneficiary in his accustomed manner of living is surely a more liberal standard than that embodied in the term "emergency." We can envision no emergency which would not be reasonably measurable in terms of health or to support a beneficiary's standard of living. Furthermore, a testator should not be required to use the exact words set forth in the statute and regulations in order to avoid creating a general power of appointment. Given the foregoing, we hold that permitting invasion of corpus "should an emergency arise" constitutes an ascertainable standard within § 2041(b)(1)(A).

(22) Case authority supports our finding that "emergency" fulfills the requirements of 26 U.S.C. § 2041(b)(1)(A). The court in *Estate of Sowell v. Commissioner of Internal Revenue,* 708 F.2d 1564 (10th Cir. 1983), found that power to invade "in case of emergency or illness" did not constitute a general power of appointment. Noting that the key characteristic of the meaning of "emergency" is that of need, the court concluded that "emergency" has no meaning broader than health, education and support. *Id.* at 1566. In *Doyle v. United States,* 358 F.Supp. 300, 302 (E.D.Pa.1973), the court found a general power of appointment where trustees could invade principal to pay testator's wife "as may be necessary for her comfort, maintenance and support, or in the event of illness, accident or other case of necessity or emergency as the result of which she may be in need." However, the court stated that if "comfort" was eliminated, an ascertainable standard would remain, necessarily implying that "emergency" falls within § 2041(b)(1)(A). *Id.* at 307.

(23) We hold that the limitation on invasion of corpus set forth in the Stella T. Hunter Will, Item III(B)(b)(9), is an ascertainable standard related to health, education, support or maintenance. Therefore, the corpus of the decedent's trust is not includable within his estate and not subject to federal estate tax. We will order that the estate tax paid on the trust be refunded to the estate of Samuel Knox Hunter, Jr., with interest.