**Clarence Blagen FISH, Administrator with the will annexed of the Estate of Minnie C. Blagen, deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 24023.

United States Court of Appeals, Ninth Circuit.

Oct. 15, 1970.

Milo E. Ormseth (argued), Frederick H. Torp, of Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for appellant.

William L. Goldman (argued), Lee A. Jackson, Loring W. Post, Attys., Johnnie M. Walters, Asst. Atty. Gen., Tax Division, U. S. Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for appellees.

Before WRIGHT and KILKENNY, Circuit Judges, and TAYLOR,* District Judge.

TAYLOR, District Judge:

Clarence Blagen Fish (taxpayer), as administrator of the estate of Minnie C. Blagen, has appealed from an adverse judgment of the District Court on his suit for refund of federal estate taxes in the sum of $33,355.13 plus interest, alleged to have been erroneously assessed and collected from the estate by the Commissioner of Internal Revenue. The taxpayer paid the deficiency assessed by the Commissioner and filed a timely claim for refund, which was disallowed in full by the Commissioner. This action followed, seeking recovery of the disputed amount.

The stipulated facts reveal that Clarence G. Blagen, the husband of Minnie C. Blagen, died on May 28, 1951. The residuary clause of his will established a trust, the terms of which provided that Minnie C. Blagen should have, during her lifetime, the right in any calendar year to demand payment to her of all or part of the net income of the trust for that year, but that any income not so claimed by her would be added to the corpus of the trust. Upon the death of Minnie C. Blagen, the trust corpus, including such accumulated income added to the corpus, was to be distributed to the grandchildren of Clarence G. Blagen.

Minnie C. Blagen (decedent) never exercised or released her power over the income of the trust in any year from the inception of the trust until her death on July 13, 1960, except insofar as the annual lapse of the power, if any such lapse occurred, constituted a release of the power as a matter of law under Section 2041(b) (2) of the Internal Revenue Code.[1] The Commissioner, in assessing the tax deficiency, included in the decedent's gross estate the net income of the trust, less allowable exemptions, for the years 1955, 1956, 1957, 1958 and 1959. The inclusion of accumulated income which had been added to the trust in those years resulted in an increase in the decedent's gross estate of $116,045.36. The taxpayer had not included this amount in the estate tax return which he had filed for the estate.

The Commissioner determined that the decedent possessed a general power of appointment over the trust income and that the failure of the decedent to exercise this power constituted a lapse of the power in each year in which it was not exercised. The Commissioner contends that the lapse constitutes a release of the power under Section 2041(b) (2) in such a way that, if it were a transfer of property owned by the decedent, the property would have been includible in the decedent's gross estate as a transfer with a retained life estate under Section 2036 (a) (1).[2]

---

* Hon. Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

1. Internal Revenue Code of 1954, § 2041 (b) (2), which provides:
   "(2) *Lapse of power.*—The lapse of a power of appointment created after October 21, 1942, during the life of the individual possessing the power shall be considered a release of such power. The preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the property, which could have been appointed by exercise of such lapsed powers, exceeded in value, at the time of such lapse, the greater of the following amounts:
   (A) $5,000, or

   (B) 5 per cent of the aggregate value, at the time of such lapse, of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could have been satisfied."

2. As income was added to the trust each year as a result of the decedent's inaction; that income generated additional income in following years which was subject to the decedent's lifetime power of appointment; and thus the "transfer" each year by the decedent was one which left her with a lifetime interest in the property. Such a transfer, resulting from the exercise or release of a power of appointment; becomes includible in the gross estate of the decedent under the provisions of Section 2041(a) (2) of the Internal Revenue Code.

The taxpayer agrees that the decedent possessed a general power of appointment, and that the "transfer" each year, had the property been owned by the decedent, would be a transfer with a retained life estate. The taxpayer contends, however, that the decedent was incompetent for some seven years prior to her death and her general power of appointment could not have been lawfully exercised or released by her or by anyone acting in her behalf and that therefore the annual expiration of her power over the trust income was not a "lapse" and thus not a release of the power within the meaning of Section 2041(b) (2). Alternatively, the taxpayer contends that if the incompetency of the decedent is immaterial and a lapse of the power occurred in each year, the Commissioner and the District Court erred in computing the allowable exemption under Section 2041(b) (2) on the basis of five per cent of the net income of the trust instead of, as taxpayer contends, five per cent of the total trust assets.

■ We agree with the District Court that the competency of the decedent is immaterial in determining whether a lapse or release of the power occurred. The statute provides, without equivocation, that a lapse of the power shall be considered a release, and does not purport to qualify the manner in which the lapse occurs. While no case has been discovered which is precisely on all fours with the facts in the instant case, it nevertheless appears from closely analogous cases that taxability and the inclusion of the assets in a decedent's gross estate are determined by the existence of the power and by circumstances which bring its release or exercise within the ambit of Sections 2041(a) (2) or 2041(b) (2). The precise manner of exercising or releasing the power is immaterial for purposes of determining taxability. Thus it is sufficient here that the power was released by its annual expiration or lapse, and it is immaterial whether the lapse occurred through a designed failure to exercise the power or through the indifference or incompetency of the decedent. Round v. Commissioner, 332 F.2d 590 (1st Cir. 1964); Townsend v. United States, 232 F.Supp. 219 (E.D.Tex.1964).[3] Since we hold the matter of the decedent's competency to be immaterial, we need not decide whether the decedent was in fact incompetent or whether the power could have been exercised by a guardian acting in her behalf.

The taxpayer next contends that the District Court erred in computing the exemption allowed under Section 2041 (b) (2). That section allows as an exemption to the amount includible in the taxable estate an amount equal to five per cent of "the aggregate value of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could have been satisfied," or the sum of $5,000, whichever is the greater. The District Court, in determining the amount of the exemption, computed the exemption on the basis of five per cent of the trust income. Since for each year in question, the sum of $5,000 was greater than five per cent of the trust income, the District Court allowed an exemption of $5,000 for each year, as the Commissioner had done. The taxpayer argues that the exemption should be $5,000 or five per cent of the total trust assets, and since five per cent of the total assets would exceed the net income for three of the five years in question and would nearly equal net income in the other two years, the end result should be that the amount includible in the decedent's estate should be reduced to $15,-858.47. The taxpayer argues that since the income payable to the decedent, had she demanded it, would have been payable either from corpus or income, the entire trust represents "assets out of

3. We note parenthetically that if the position contended for by the taxpayer were adopted, the result would be an open invitation to contest the competency of the decedent in every similar case, since the competency of any decedent who held a similar power of appointment, and many of whom suffer mental debilitation to some degree prior to death, would be subject to the same posthumous inquiry which the taxpayer seeks here. It should be noted that the decedent was never adjudicated an incompetent prior to her death.

which, or the proceeds out of which, the exercise of lapsed powers could be satisfied," and thus the entire trust assets should serve as the basis for the five per cent computation. We do not agree. Even if the trustee could have satisfied a demand for income out of either corpus assets or income funds, a point which we do not here decide, the distribution would necessarily have been a distribution of income as a matter of federal tax law or as a matter of trust accounting, since the decedent had no power whatever to invade the corpus of the trust.

■ While the language of Section 2041(b) (2) (B), like much of the statutory tax law, is hardly a model of precision and clarity on the point, we are satisfied from a reading of the statute together with its legislative history that the applicable basis for computation of the allowable exemption is the trust or fund in which the lapsed power existed.[4] The District Court correctly determined that the power of appointment in the instant case existed only with respect to the trust income, and properly allowed an exemption of $5,000 for each year in question.

The District Court correctly resolved the material issues in the case, and its judgment is accordingly affirmed.

---

4. Senate Report No. 382, 82nd Cong., 1st Sess., pp. 6–7 (2 U.S.Code Congressional and Administrative News (1951) pp. 1530, 1535).