84 Cal.App.3d 717 (1978)
Estate of DEWEY WILLIAM LOGAN, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
SECURITY PACIFIC NATIONAL BANK, as Executor, etc., Objector and Respondent.
Docket No. 52114.
Court of Appeals of California, Second District, Division Four.
September 8, 1978.
*719 COUNSEL
Myron Siedorf, Margaret Groscup and Richard J. Barnet for Petitioner and Appellant.
Shepherd, Shepherd & Dundas and John A. Dundas II for Objector and Respondent.
*720 OPINION
JEFFERSON (Bernard), J.
This is an appeal by the Controller of the State of California from an order fixing inheritance tax. (Prob. Code, § 1240.) Respondent herein is the Security Pacific National Bank, executor of the estate of Dewey William Logan.
Logan died testate on November 5, 1972. His will was admitted to probate on December 11, 1972. The major asset left by Logan was a restaurant known as the "Original Pantry Restaurant." At the time of death, Logan was unmarried. In his will, he left a lump sum gift of cash and personal belongings to his ex-wife, Marietta Laird. He directed that this bequest was to be "paid in full, before any other distributions are made from my estate."
The testator then made four specific cash bequests and directed that these were to be paid in full before fulfillment of the bequests set forth in subsequent portions of the will.
The testator then expressed the desire to provide for certain employees of his restaurant business. The will set forth cash bequests to those employees who could qualify for them because of the length of their employment. Logan declared in his will that "[s]hould the amount of the said balance of my estate available for distribution be insufficient to fully pay the above legacies, each shall be reduced proportionately."
The will continued, providing for 35 additional cash bequests of varying amounts.
Finally, the testator directed that any residue was to be held by Security Pacific National Bank in trust for the benefit of Marietta Laird. Marietta was given the right to withdraw principal from the trust "at any time and from time to time up to a maximum of ten (10%) percent of the current value of the Trust Estate in any one year. The value of the Trust Estate to be used for the purpose of determining her right to withdraw shall be the average fair market value of the Trust established for the year preceding such withdrawals. The right to withdraw during the first year of Trust administration shall be based upon the valuation of assets transferred into the Trust from my probate estate."
Logan's will also conferred discretion upon the trustee to provide additional funds from the trust to Marietta Laird should she need them.
*721 In paragraph seven, subsection 5 of the will, Logan declared: "There is hereby granted to MARIETTA LAIRD the power to appoint over the whole or any part of the principal and accruals of the Trust Estate which may remain undisposed of at her death, after the Trustee has made all payments required by the terms of this Trust. Such power shall be exercised only by written instrument other than a Will and filed with the Trustee in its Trust Department where this Trust is being administered at the death of MARIETTA LAIRD. It may be exercised from time to time and each appointment may be revoked or modified in the same manner in which it is exercised."
It was then provided that should Marietta Laird fail to exercise the power of appointment and die without issue, the residue was to be distributed to the Shriners Hospital for Crippled Children in Los Angeles.
Marietta Laird survived the testator but died without issue on May 24, 1974, while the testator's estate was in administration. The residuary trust was never established, and the power of appointment was not exercised by Marietta Laird.
The inheritance tax referee, in computing the tax due, determined that nothing was owed by the Logan estate on that portion of the estate which was to be held in trust and subject to appointment by Marietta Laird because the trust had never been established and the power of appointment had not been exercised. The Controller objected to the report of the inheritance tax referee, but the objections were overruled in the trial court. The residue of the Logan estate, amounting to $229,163, was thus held to be exempt from inheritance taxation and was to be distributed to the Shriners Hospital, a charity.
On this appeal, the Controller contends that the Logan will created an interest in Marietta Laird in the residue of the Logan estate  a general power of appointment  which was taxable to Marietta Laird as donee of the power pursuant to Revenue and Taxation Code section 13694, subdivision (a). This subdivision provides, in pertinent part, that "a gift of a general or limited power of appointment made in conjunction with a disposition of property otherwise subject to this part ... is a transfer subject to this part [taxable] from the donor to the donee at the date of the donor's death."
*722 Respondent executor claims that the issue of taxability to the donee of a power of appointment under the state inheritance tax law may be properly resolved by interpretation of the Logan will; by determining the intent of the testator and honoring that intent. In effect, the executor argues that the inference may be drawn from Logan's dispositive scheme that the testator had well established priorities of disposition; that he did not intend to make a gift of a present interest in the residual trust to Marietta Laird, but in fact only provided for a gift contingent upon estate administration being completed with residual funds not exhausted by the numerous specific bequests set forth in the will and upon the establishment of the trust, and, by implication, upon the survival of Marietta Laird to take under the terms of trust and to exercise her power of appointment.
Respondent executor bank takes the position that, since the trust was never established, there was no power of appointment for Marietta Laird to exercise, and, hence, no taxable property interest was ever received by Marietta Laird in the Logan estate residue. This view was taken by the trial court in its finding that "[d]ecedent's will did not give a `presently exercisable' power of appointment to Marietta Laird as of the date of his death" and that "[s]aid power was not exercisable until the appointment of a trustee had been made by the Court."
It is the executor bank's thesis that the testator Logan intended for the power of appointment to Marietta to become effective only upon Marietta's survival of distribution of the estate residue to the trustee which would establish the trust.
(1) It is true, as the executor bank asserts, that when interpreting a will, the primary task of the court is to ascertain testamentary intent (Prob. Code, § 101; Estate of Russell (1968) 69 Cal.2d 200 [70 Cal. Rptr. 561, 444 P.2d 353]) and, insofar as it is possible, to implement that intent. (2) Interpretation of any written document, including a will, where no extrinsic evidence has been adduced to assist the court, is an appellate judicial function which is undertaken independently by the reviewing court. (Estate of Dodge (1971) 6 Cal.3d 311, 318 [98 Cal. Rptr. 801, 491 P.2d 385].)
(3) We find nothing, however, in Logan's dispositive plan or in the language employed in establishing the residual trust which indicates that the testator was making his residual gift to Marietta Laird contingent upon her survival at the time the trust would be established. While the testator was apparently mindful that his largesse might exceed the *723 amount of his assets, his concern about this was not out of the ordinary. Few, if any, testaments are drawn with a totally accurate estimate of the amount of assets which will become the residue of an estate. There are too many intervening factors, as most testators realize. It is of significance that Logan prefaced the gift of a power of appointment over the residue of his estate to Marietta Laird with the language, "I hereby give," from which an inference may fairly be drawn that he intended a present gift to her of something of value.
We consider next the impact of the California Inheritance Tax Law in light of the circumstances presented in the case at bench. In 1965, the California Legislature enacted a comprehensive scheme for state inheritance taxation of property subject to a power of appointment. (Rev. & Tax. Code, div. 2, pt. 8, ch. 4, art. 5, § 13691 et seq.)
In Revenue and Taxation Code section 13692 a general power of appointment is defined as "a power which is exercisable in favor of the decedent [donee], his estate, his creditors, or the creditors of his estate, ..." We have previously referred to Revenue and Taxation Code section 13694 as making a gift of a general power of appointment from a testator to a donee taxable to the donee in the testator's estate at the date of the testator's death.
(4) A general power of appointment may also become subject to taxation upon its exercise and also upon its nonexercise at the time of the donee's death. This is covered by Revenue and Taxation Code section 13696 which provides: "If at the time of his death a decedent [a donee of a power of appointment] has a general power of appointment with respect to property, the exercise of the power is subject to this part [taxation] as a transfer of the property from the decedent to the person to whom the property is appointed and the decedent's failure to exercise the power is subject to this part as a transfer of the property from the decedent to the person to whom the property passes by virtue of the nonexercise of the power. For purposes of this section, the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving a notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."
*724 Federal legislation provides, in language substantially similar to the California legislation, for taxation of general powers of appointment. (See 26 U.S.C. § 2041(a)(2).) The Controller urges, therefore, that federal decisions interpreting the federal legislation should be persuasive authority for the position that the general power of appointment involved in the case at bench became taxable to the donee Marietta in Logan's estate.
In Estate of Nunn (1974) 10 Cal.3d 799 [112 Cal. Rptr. 199, 518 P.2d 1151], the question presented was whether a donee-wife at the time of her death possessed a general power of appointment over the assets of a testamentary trust provided for her by her predeceased husband-donor. The Nunn court concluded that she possessed such a power and that the inheritance tax appraiser properly included the assets of the trust in the donee-wife's estate.
(5) In Nunn, the California Supreme Court observed that "[t]he language [of those sections of the Revenue and Taxation Code dealing with powers of appointment] as adopted is substantially identical to that of federal estate tax provisions dealing with powers. [Citation.] The manifest purpose of the 1965 revision was to conform state inheritance tax treatment of powers with the federal estate tax treatment and, consequently, we accord great weight to applicable federal administrative regulations and decisional law. [Citations.]" (Estate of Nunn, supra, 10 Cal.3d 799, 805-806.) (Italics added.)
The Nunn court concluded that "`[t]he object of Congress is to include in a decedent's estate, regardless of ... gossamer distinctions ... about powers, special powers, powers in trust, and the like, all economic value which a decedent was in a position to divert to his own use if he desired.' [Citation.] We can impute no lesser purpose to the Legislature in its enactment of section 13691 et seq. (see § 13648) and construe them accordingly." (Id., at p. 809.) Other authorities support the view that the purpose of the 1965 California legislation was to insure conformity with federal law. (See 40 State Bar J. (1965) 600, 606-607; Estate of Morse (1970) 9 Cal. App.3d 411, 415 [88 Cal. Rptr. 52]; Estate of Weaver (1972) 27 Cal. App.3d 312, 317 [103 Cal. Rptr. 664]; Estate of Allgeyer (1976) 60 Cal. App.3d 169, 172 [129 Cal. Rptr. 820].)
A federal case of significance to the issue before us is Doyle v. United States (E.D.Pa. 1973) 358 F. Supp. 300. In Doyle, a power of appointment over a residual trust was given by will but was never exercised by the donee because the trust was never established. Essentially, the same *725 argument was presented in Doyle to prevent taxation of the property subject to the general power; it was claimed that the power did not come into existence, and that there was no property subject to the power if it did exist, because the trust created in the testator's will did not exist at the time of the donee's death, because at that time "the administration of testator's estate by his executors had not been completed." (Doyle, supra, 358 F. Supp. 300, 303.) (Italics added.) The Doyle court stated that "[t]hese contentions are essentially variations on the same theme  that there did not exist a power of appointment at the time of the decedent's death." (Id., at p. 304.)
In Doyle, it was concluded that "[a] decedent has a power of appointment if at the time of death (1) there exists an interest in property constituting control of the property, and (2) the interest exists in the decedent  that is, the interest must exist and the decedent must possess the interest. [Citations.] Whether an interest in property constituting control exists is a matter of state law." (Doyle, supra, 358 F. Supp. 300, 304.) The Doyle court then examined "the state law" involved, that of Pennsylvania, and determined that Pennsylvania did not require actual establishment of a trust before the beneficiaries thereof had vested rights in the trust. It followed, therefore, that under Pennsylvania law there was an existent interest created by the testamentary gift of the power of appointment.
The Doyle court also made the cogent observation that "the existence of a power to appoint is not dependent on the capacity of the decedent to exercise the power. [Citations.]" (Id., at p. 305.)
Other federal courts have reasoned similarly to Doyle. (See Fish v. United States (9th Cir.1970) 432 F.2d 1278; Jenkins v. United States (5th Cir.1970) 428 F.2d 538; Estate of Bagley v. United States (5th Cir.1971) 443 F.2d 1266; cf. Finley v. United States (S.D.Fla. 1975) 404 F. Supp. 200.) In addition, there have been administrative rulings based upon the principles expressed in Doyle. (See Int. Rev. Ruling 75-351, I.R.B. 1975-2, pp. 369-370.)
It is to be noted that the Nunn case, supra, 10 Cal.3d 799, involved a determination of whether a general power of appointment existed in the alleged donee of such a power at the donee's death so as to be taxable as a part of the donee's estate pursuant to Revenue and Taxation Code section 13696. The Doyle case, supra, 358 F. Supp. 300, is similar to Nunn in this respect and involved the federal legislative counterpart to section *726 13696. (26 U.S.C. § 2041(a)(2).) (6) It follows, however, that if a power created in a donee is a general power of appointment sufficient to constitute an existing property interest upon the death of the donee as an asset of the donee's estate, taxable under Revenue and Taxation Code section 13696, it is a general power of appointment sufficient to constitute an existing property interest transferred to the donee upon the donor's death and taxable upon the donor's death under Revenue and Taxation Code section 13694.
When the question arises under federal legislation with respect to whether the donor has created an existing interest in the donee constituting a general power of appointment, the federal courts look to the law of the state involved for a determination of whether an existing interest has been created by the donor which becomes a vested interest in the donee upon the donor's death. (Morgan v. Commissioner (1940) 309 U.S. 78, 80-81 [84 L.Ed. 585, 588-589, 60 S.Ct. 424].)
(7) We conclude that the Logan will created a present, existing interest of a general power of appointment in Marietta Laird upon Logan's death. Probate Code section 28 provides that "[t]estamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death." In addition, Probate Code section 300 provides for the creation of immediate interests upon a decedent's death to those persons who take either by will or by succession. The decisional law emphasizes that a testamentary trust vests interests in the beneficiaries at the death of the testator (Estate of Lefranc (1952) 38 Cal.2d 289 [239 P.2d 617]; Wells Fargo Bank & Union Trust Co. v. United States (9th Cir.1957) 245 F.2d 524), and further, that a power of appointment is deemed to exist as of the donor's death. (Estate of Newton (1950) 35 Cal.2d 830 [221 P.2d 952, 19 A.L.R.2d 1399].) Under California law, too, there is a strong preference for vested interests, and gifts contingent upon survival to a fixed point in time are not presumed to reflect testamentary intent unless that intent is clearly expressed in the testamentary document. (Estate of Haney (1959) 174 Cal. App.2d 1 [344 P.2d 16].)
What remains to be decided is whether the nonexercise of the power of appointment by Marietta, the donee, due to conditions which were beyond her control, renders the property subject to the power nontaxable under California law.
*727 The executor bank contends that Revenue and Taxation Code section 13694 was only intended to tax the transfer of a "presently exercisable" power of appointment, and that, since the donee in this case never had the opportunity to exercise it, no taxable event occurred. The executor bank relies in part upon Civil Code section 1381.3, subdivision (c), which provides that "[a] power of appointment is `not presently exercisable' if it is `postponed.' A power is `postponed' if: [¶] (1) The creating instrument provides that the power may be exercised only after a specified act or event occurs or condition is met, and such act or event has not occurred or the condition has not been met; ..."
The Controller points out that nothing in section 13694 of the Revenue and Taxation Code limits its application to a "presently exercisable" interest. The Controller relies on federal law, which makes no distinction between powers of appointment which are in existence and exercisable and those which are in existence but cannot be exercised. For federal tax purposes, if the power is found to presently exist, it is immaterial whether it has or can be exercised by the donee. (See Doyle, supra, 358 F. Supp. 300, and Fish, supra, 432 F.2d 1278.) In the Fish case, the power was not exercised because the donee was incompetent during the period when the power could have been exercised, but, since the power was in existence, the gift of the power was held to be subject to the federal inheritance tax.
We offer no opinion on the result which would be reached in California in situations similar to that of Fish. Civil Code section 1384.1, subdivision (a), provides that "[a] power of appointment can be exercised only by a donee having the capacity to transfer the interest in property to which the power relates." (Civ. Code, § 1384.1, subd. (b), amended by Stats. 1972, ch. 579, § 13, p. 999.)
(8) In situations other than incompetency of the donee of the power of appointment, we follow the majority of the federal decisions and hold that, despite the fact that administration of the Logan estate had not been completed and the estate residue turned over to the trustee, and thus the power of appointment over the residue was never exercised, the gift of the general power of appointment to Marietta created a present, existing interest in her as the donee. Upon the death of Logan, there was thus a transfer of a present interest to Marietta Laird to which section 13694 of the Revenue and Taxation Code was applicable.
*728 The order is reversed with instructions that an inheritance tax be ordered fixed in accordance with the views expressed in this opinion.
Kingsley, Acting P.J., and Jones, J.,[*] concurred.
A petition for a rehearing was denied September 26, 1978, and respondent's petition for a hearing by the Supreme Court was denied November 1, 1978.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.