*Decision will be entered under Rule 155.*

ESTATE OF RUTH T. REID, DECEASED, WALTER D. REID, INDEPENDENT EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9215–76. Filed February 15, 1979.

*Robert C. Johnson, Jr.,* and *Robert C. Johnson,* for the petitioner.
*Robert M. Smith,* for the respondent.

GOFFE, *Judge:* The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $299,619.92.

Due to concessions made by the parties, the issues for our decision are:

(1) Whether decedent, in connection with an irrevocable inter vivos trust she created in 1955, possessed at the date of her death a contingent right to designate who would possess or enjoy trust property and income, thereby causing the inclusion of such property and income in her gross estate under section 2036(a)(2), I.R.C. 1954;[1]

(2) Whether the provisions of the trust indenture created by decedent are ambiguous so that extrinsic evidence offered to establish the intent of decedent is admissible; and

(3) Whether the Texas "Dead Man's Statute" precludes admissibility of testimony from decedent's attorney and decedent's son.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts along with the exhibits attached thereto are incorporated by this reference.

Mrs. Ruth T. Reid, herein decedent, died on November 22, 1972. Mr. Walter D. Reid was appointed independent coexecutor of decedent's estate and resided at Dallas, Tex., at the time he filed the petition in the instant case. He timely filed a United States Estate Tax Return with the Internal Revenue Service Center, Austin, Tex.

On October 26, 1955, decedent established an irrevocable inter vivos trust in which separate trusts were created for the benefit

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

of her issue. Pursuant to the creation of these trusts, she transferred property to the Mercantile National Bank of Dallas as trustee. Following the transfer of property to the trustee, decedent filed a United States Gift Tax Return reporting the transfer and paid Federal gift tax in the amount of $66,277.33.

The pertinent articles of the trust indenture are as follows:

FIRST: The Trustee shall divide the trust property into as many equal shares as there are issue of the Settlor living at the date this Indenture of Trust is executed. The Trustee shall allocate to each living issue of the Settlor one of such equal shares and shall hold each share so allocated in a separate trust for the benefit of the issue in whose favor the allocation is made in accordance with the provisions of Article SECOND. After the date this Indenture of Trust is executed, as each new issue of the Settlor comes into existence by birth or final adoption, the Trustee shall immediately establish a separate trust for the benefit of such new issue. The Trustee shall allocate to such new separate trust, from the trust property of each of the then existing separate trusts, property which will equal in value one equal share if the then remaining principal and undistributed income of each of the then existing separate trusts were placed in one fund and such fund were then divided into as many equal shares as there are then living issue of the Settlor. In determining the contributive share of each of the then existing separate trusts to make up such equal share for the new separate trust, each of the existing trusts shall contribute an amount which bears the same ratio to the total amount to be contributed to the new trust which its principal and undistributed income bears to the total principal and undistributed income of all of the separate trusts. The Trustee shall hold the property in the new separate trust for the benefit of such new issue of the Settlor in accordance with the provisions of Article SECOND. Each trust shall be designated and known by the name of its first beneficiary, preceded by the word "The" and followed by the words "Trust — Special" — for example, "The Ruth Caroline Reid Trust — Special", etc.

SECOND: The separate trust established hereunder for such of the issue of the Settlor as may be living from time to time is as follows:

1. As to each separate trust, the Trustee shall have the power to accumulate all or any part of the income of each such separate trust or to distribute the income together with all or any part of the principal of such trust to or for the benefit of the person for whom such trust is named at such times and in such manner as the Trustee in its uncontrolled discretion may determine. Any income not distributed from time to time shall be added to and become a part of the principal of such trust. The total distribution of all principal of any such trust shall not, however, have the effect of terminating such trust so long as the person for whom such trust is living but such trust shall continue in existence for the purpose of receiving possible future distributions of property properly due it upon the termination of other trusts created hereunder whose termination is caused by the death of particular beneficiaries under paragraph 2 of this provision.

It is the intent and purpose of the foregoing paragraph of this provision SECOND that the Trustee shall have the widest possible latitude in the exercise

of its independent judgment as to the advisability of the distribution or accumulation of principal or income of the several trusts created hereunder. It is not contemplated that such distributions as between the various trusts shall either be uniform or consistent to any particular standard. To the contrary, the Trustee is urged and encouraged to exercise the discretionary powers herein granted to it freely and impartially according to its best judgment of the welfare and interests of each current beneficiary; the rights of all subsequent beneficiaries shall be considered subordinate and no Trustee shall be answerable to any subsequent beneficiary for anything done or omitted in favor of a current beneficiary but no current beneficiary may compel any such favorable treatment

\* \* \* \* \* \* \*

TENTH: No bond or surety shall be required of the original Trustee of each trust hereunder or of any successor Trustee appointed as hereinafter provided.

The Trustee may resign as Trustee from the trusts hereby created at any time by giving thirty (30) days' written notice delivered in hand or by registered mail to the Settlor, or, if the Settlor has deceased, to the beneficiaries then entitled to the income. The person or a majority of the persons of full age to whom notice is thus given may appoint a successor Trustee by a writing endorsed hereon or annexed hereto or, if no such appointment is made within the said thirty (30) days, the resigning Trustee itself shall so appoint a successor. Any succeeding Trustee shall have all the powers conferred upon the original Trustee.

Having acted in the capacity of trustee for several years, the Mercantile National Bank resigned as trustee and Mr. George F. Smith, Jr., was appointed successor trustee, a position he held until some time after decedent's death.

In November 1971, decedent sustained a stroke and its effect rendered her permanently incompetent. On January 31, 1972, the Probate Court of Dallas County, Tex., entered an order adjudicating decedent as a mental incompetent. Pursuant to the order of the probate court, Mr. Reid was appointed guardian of decedent's estate. Decedent remained incompetent until her death and Mr. Reid continued to act as guardian of her estate until her death.

Following decedent's death, Mr. Reid and Mr. Smith were appointed coexecutors of her estate and timely filed a United States Estate Tax Return on August 22, 1973, electing the alternate valuation date of May 22, 1973. The property and income therefrom which decedent transferred to the 1955 trust was not included in her gross estate for Federal estate tax purposes.

The Commissioner, in his statutory notice of deficiency, determined that the fair market value of the net assets of the

trust established by decedent in 1955 was includable in her gross estate because she retained the right to designate who would possess or enjoy the trust property and income. As a result, the Commissioner increased decedent's taxable estate in the amount of $795,623.[2]

## OPINION

The first issue for our decision is whether decedent, in connection with an irrevocable inter vivos trust she created in 1955, possessed on the date of her death a contingent right to designate who would possess and enjoy the trust property and income, and as a result cause the inclusion of such property and income in her gross estate under section 2036(a)(2).

Mrs. Ruth T. Reid, decedent, executed a trust indenture on October 26, 1955, from which separate trusts were created for the benefit of her issue. The trust indenture, set forth in appropriate detail in our findings of fact, provided for the decedent, if alive, to appoint a successor trustee in the event a trustee resigned. In addition, the trust set forth the powers of the trustee which included the discretionary right to accumulate all or any part of trust income or distribute the income together with all or any part of the principal to or for the benefit of the person for whom each individual trust was created. No provision in the trust indenture prohibited decedent from appointing herself as successor trustee in the event of a trustee's resignation.

Respondent contends that at the time of decedent's death she held the right to designate who would possess or enjoy the trust property. More specifically, respondent argues that decedent held such right due to her right to appoint herself successor trustee. Therefore, respondent argues that section 2036(a)(2) requires the inclusion of the fair market value of the trust property in decedent's gross estate. Section 2036(a)(2) provides:

---

[2]The trusts created by the trust indenture consisted of net assets with a fair market value as of May 22, 1973, as follows:

| | |
|---|---:|
| Claire Virginia Reid Trust, special | $119,315.34 |
| Ruth Caroline Reid Trust, special | 87,419.32 |
| Walter D. Reid Trust, special | 117,315.32 |
| Laura Elizabeth Kalmar Trust, special | 169,524.34 |
| Ruth Caroline Kalmar Trust, special | 151,524.34 |
| Walter Reid Kalmar Trust, special | 150,524.34 |
| Total | 795,623.00 |

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact. end before his death—

\* \* \* \* \* \* \*

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

Petitioner takes the position that decedent did not possess contingent right, i.e., the right to appoint herself successor trustee, at the time of her death so as to cause the application of section 2036(a)(2) because decedent was adjudicated incompetent and remained legally incompetent until her death. Petitioner, in relying upon *Estate of Gilchrist v. Commissioner*, 69 T.C. 5 (1977), on appeal (5th Cir., June 20, 1978), argues that when decedent was adjudicated incompetent she was legally deprived of any right she may have held prior thereto. Respondent counters by arguing that decedent's mental incompetence is irrelevant in reaching a decision on this issue because it is not the manner in which a right is exercised but rather the existence or possession of a right at the time of death that is controlling.[3] In so arguing, respondent relies upon *Fish v. United States*, 432 F.2d 1278 (9th Cir. 1970); *Estate of Round v. Commissioner*, 332 F.2d 590 (1st Cir. 1964), affg. 40 T.C. 970 (1963); and *Hurd v. Commissioner*, 160 F.2d 610 (1st Cir. 1947), affg. 6 T.C. 819 (1946).

The facts in *Estate of Gilchrist* were strikingly similar to the facts in the instant case. The husband of decedent, after making specific bequests under his will, bequeathed to her the right to the income, use, and benefits from the remainder of his property as well as the right to sell or transfer the property as long as she lived. The decedent was subsequently adjudicated an incompetent by a Texas probate court and the court as a result of her adjudication appointed a guardian of her person and estate. The decedent remained legally incompetent until her death. In deciding whether the decedent possessed a general power of

---

[3]At the trial we reserved our ruling on the admissibility of evidence proffered by petitioner which related to the mental incompetence of decedent. As indicated herein, it is our ruling that such evidence is admissible due to our reliance upon *Estate of Gilchrist v. Commissioner*, 69 T.C. 5 (1977), on appeal (5th Cir., June 20, 1978).

appointment, we examined Texas law pursuant to *Jenkins v. United States,* 428 F.2d 538 (5th Cir. 1970), cert. denied 400 U.S. 829 (1970), and held that the decedent, from the time of her adjudication as an incompetent until her death was deprived of any power she may have held. Further inquiry into Texas law established that decedent's guardian could not adopt the doctrine of substitution of judgment which would allow the action of a guardian to be imputed to the decedent. *City Bank Farmers Trust Co. v. McGowan,* 323 U.S. 594 (1945); cf. *Armata v. United States,* 494 F.2d 1371, 1376 (Ct. Cl. 1974); *Estate of Gilchrist v. Commissioner, supra* at 17–18; *In re Guardianship of Estate of Neal,* 406 S.W.2d 496 (Tex. Civ. App. 1966), affd., application for writ refused, no reversible error, 407 S.W.2d 770 (Tex. 1966). Accordingly, we held that neither the decedent nor her guardian possessed a general power of appointment at the time of decedent's death as contended by respondent.

An appeal in the instant case lies in the U.S. Court of Appeals for the Fifth Circuit, before which the appeal in *Estate of Gilchrist* is pending. *Estate of Gilchrist* has recently been followed by a District Court in the Fifth Circuit. *Williams v. United States,* an unreported case (W.D. Tex. 1978, 43 AFTR2d par. 148,295, 78–2 USTC par. 13,264, on appeal (5th Cir., Dec. 12, 1978)). Accord, *Finley v. United States,* 404 F.Supp. 200 (S.D. Fla. 1975), on appeal (5th Cir., Jan. 3, 1978). Cf. *Alperstein v. Commissioner,* 71 T.C. 351 (1978); *Pennsylvania Bank & Trust Co. v. United States,* 451 F.Supp. 1296 (W.D. Pa. 1978).

In the instant case, decedent was adjudicated incompetent by a Texas probate court and remained legally incompetent until her death. The probate court appointed Mr. Reid as guardian of her estate.

Under the rationale of *Estate of Gilchrist* and the application of Texas law neither the decedent nor her guardian possessed the right to exercise the power to appoint a successor trustee pursuant to the provisions of the trust indenture established in 1955. Once decedent was adjudicated incompetent she was deprived of any right she may have held prior thereto. *Estate of Gilchrist v. Commissioner, supra* at 17. In addition, the appointment of Mr. Reid as guardian of her estate did not allow him to act in a manner which decedent would have acted, but for her legal incompetence. *Estate of Gilchrist v. Commissioner, supra* at 18. Under section 32 of the Texas Probate Code, "the

rights, powers and duties of executors, administrators, and guardians shall be governed by the principles of the common law, when the same do not conflict with the provisions of the statutes of this State." There is no authority under Texas law which allows a guardian of a ward's estate to appoint a successor trustee. Section 230(b) of the Texas Probate Code enumerates specific rights, powers, and duties of a guardian of the estate of a ward as follows:

> The guardian of the estate of a ward is entitled to the possession and management of all properties belonging to the ward, to collect all debts, rentals, or claims due such ward, to enforce all obligations in his favor, and to bring and defend suits by or against him; but, in the management of the estate, the guardian shall be governed by the provisions of this Code. It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property. He shall account for all rents, profits, and revenues that the estate would have produced by such prudent management.

Clearly, the right to appoint a successor trustee is beyond the scope of the rights, powers, and duties of a guardian as set forth above. The right held by decedent prior to her adjudication was neither property nor an estate. See *Krausse v. Barton*, 430 S.W.2d 44 (Tex. Civ. App. 1968), affd., application for writ refused, no reversible error, without an opinion (Tex. Sup. Ct., Oct. 9, 1968). Moreover, the discretionary right to appoint oneself as successor trustee and thus have the discretionary power to distribute trust property to the trust beneficiaries is a personal right which does not vest in a guardian upon his appointment. See *Weatherly v. Byrd*, 566 S.W.2d 292 (Tex. 1978).

Respondent further argues that the trust property is includable in decedent's gross estate because her guardian, pursuant to article 7425(a) of the Texas statutes, failed to release the power decedent held prior to her adjudication. We disagree. The basis of respondent's argument rests upon the right to appoint herself as successor trustee, which would enable her to designate which beneficiary under the various trusts would enjoy, if at all, the trust property during her lifetime. Article 7425(c) sets forth a procedure whereby a guardian can release specific powers possessed by a ward. None of the powers enumerated therein include the right to appoint a successor trustee. Accordingly, we hold that the fair market value of the net assets of the trust property is not includable in decedent's gross estate.

During the trial of the instant case, petitioner presented

testimony to which we reserved our ruling on its admissibility. The testimony related to matters which deal with the final two issues presented to us. However, having decided the first issue in favor of petitioner, we need not address ourselves to the merits of the remaining issues presented.

*Decision will be entered under Rule 155.*