ESTATE of Anna Lora GILCHRIST, Deceased, Layland Myatt and Elizabeth Dearborn, Independent Executors, Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

ESTATE of Ruth T. REID, Deceased, Walter D. Reid, Independent Executor, Petitioners–Appellees.

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

Nos. 78–2400, 79–3005.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard Farber, Atty., Gilbert E. Andrews, Chief, Appellate Section, James A. Riedy, Atty., Chief Counsel, I.R.S., N. Jerold Cohen, James L. Stegmann, Washington, D.C., for respondent–appellant.

Brooks, Tarlton, Gilbert, Douglas & Kressler, Ben A. Douglas, Fort Worth, Tex., Robert C. Johnson, Jr., Dallas, Tex., for petitioners–appellees.

Before COLEMAN, Chief Judge, PECK *
and KRAVITCH, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The questions raised by these federal estate–tax cases concerned property over which decedents "had" certain incidents of ownership–incidents which the decedents in these cases lacked the legal capacity to exercise at the times of their deaths.

## I. THE GILCHRIST CASE

In 1960, Anna Gilchrist's husband, having made several specific bequests to others, left to his wife "the income the use and benefits with full rights to sell or transfer-

all [sic] the remainder of [his] property, both real and personal, so long as she may live. . . ." This remainder was to be divided among named remaindermen should Mrs. Gilchrist not have exercised her power over it.

In 1971, a Texas court declared Mrs. Gilchrist to be of unsound mind and appointed guardians of her person and estate. Two years after Mrs. Gilchrist's death in 1973, the Commissioner declared in a notice of estate–tax deficiency that Mrs. Gilchrist had received a general power of appointment under her husband's will and that the value of the property subject to this power should be included in her gross taxable estate. The Tax Court held otherwise and this appeal followed.

The foremost question on appeal is whether Mrs. Gilchrist, contrary to the Tax Court's holding at 69 T.C. 5, 19 (1977), at the time of her death had a "general power of appointment" within the meaning of that term in the Revenue Code. The Code provides in pertinent part that a decedent's gross estate shall include the value of all property "with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment. . . ." I.R.C. § 2041(a)(2). A "general power of appointment" is defined as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. . . ." Id. § 2041(b)(1).[1] A general

---

* Circuit Judge of the Sixth Circuit, sitting by designation.

1. The following exceptions are noted:

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

(B) A power of appointment created on or before October 21, 1942, which is exercisable by the decedent only in conjunction with another person shall not be deemed a general power of appointment.

(C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person–

(i) If the power is not exercisable by the decedent except in conjunction with the creator of the power–such power shall not be deemed a general power of appointment.

(ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent–such power shall not be deemed a general power of appointment. For the purposes of this clause a person

power of appointment under § 2041 must be "exercisable." This appeal is mainly a dispute over the meaning of that work in estate–tax argot. The Commissioner contends that § 2041 embraces all powers which are exercisable by the terms of the instruments creating them. Mrs. Gilchrist's executor prefers a more everyday construction of the word, arguing that a power which a decedent is personally unable to exercise cannot be an "exercisable" one.

Construing § 2041 requires a balancing of considerations of fairness and utility. Equitable considerations weigh against including property in a decedent's estate, when that decedent held only the most attenuated incidents of ownership of the property. Yet to require the Commissioner and the courts to determine whether in every case decedents personally had the legal capacity to exercise powers of appointment would seriously complicate an area where Congress has sought "a test of taxability which is simple, clear–cut, and easy to apply." Senate Rep. No. 82–382 (on Powers of Appointment Act of 1951) *reprinted* [1951] *U.S.Code Cong. & Admin.Serv.* at 1530, 1531.

The history of Congressional treatment of taxation of powers of appointment does not support exempting from taxation powers held by incompetents. *See generally* Note, *Federal Estate Tax: A Possible Exception in the Application of I.R.C. Section 2041 to Testamentary Powers of Appointment Held by Incompetent Decedents,* [1977] B.Y.U.L.Rev. 644, 650–51. Originally, appointive property was taxed only if subject to a general power which had been exercised. Revenue Act of 1918, § 402, 40 Stat. 1057, 1097. Amendments made in 1942 included property subject to unexercised pre–1942 powers in the taxable estate unless "the donee of such power is under a legal disability to release such power...." Revenue Act of 1942, § 403(d)(2), 56 Stat. 798, 944. It is clear from the language of these amendments that a power could be "exercisable" under the Revenue Act even though such a disability existed. *See Pennsylvania Bank & Trust Co. v. United States,* 451 F.Supp. 1296, 1300 n. 6 (W.D.Pa.1978), *aff'd,* 597 F.2d 382 (3d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

The present § 2041 of the Code was born with the Powers of Appointment Act of 1951, 65 Stat. 91. This Act further limited the retroactive application of the 1942 amendments, but did not distinguish between competent and incompetent holders of post–1942 powers. The 1942 amendments had shown Congress's awareness of the problem of the incompetent holder of a taxable power; Congress's silence was eloquent when it declined to create an express dispensation for holders of post–1942 powers. *See Alperstein v. Commissioner,* 613 F.2d 1213, 1217 (2d Cir. 1979), *cert. denied sub. nom. Greenburg v. Commissioner,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980).

Parallel usage of the term "exercisable" in § 2056 of the Revenue Code also shows that the word was not used by Congress in its quotidian sense. Section 2056 defines the property which qualifies for the "marital deduction"–an exemption from estate tax of certain property passing between spouses. Property subject to a life estate with a testamentary power of appointment

---

who, after the death of the decedent, may be possessed of a power of appointment (with respect to the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power.

(iii) If (after the application of clauses (i) and (ii)) the power is a general power of appointment and is exercisable in favor of such other person–such power shall be deemed a general power of appointment

only in respect of a fractional part of the property subject to such power, such part to be determined by dividing the value of such property by the number of such persons (including the decedent) in favor of whom such power is exercisable.

For purposes of clauses (ii) and (iii), a power shall be deemed to be exercisable in favor of a person if it is exercisable in favor of such person, his estate, his creditors, or the creditors of his estate.

I.R.C. § 2041(b)(1).

in a surviving spouse is excluded from the decedent spouse's estate if the "power in the surviving spouse . . . is exercisable by such spouse alone and in all events." I.R.C. § 2056(b) (5). Since eligibility for the martial deduction must be determined at the time of the donor spouse's death,[2] "exercisable" in this context must mean "exercisable under the terms of the instrument creating the interest." *See Pennsylvania Bank, supra,* 451 F.Supp. at 1300–01, *adopted* 597 F.2d 383–84.

■ Decisions of this and other circuits of the Court of Appeals have established that a decedent's actual inability (as distinguished from legal incapacity) to exercise a power of appointment at the time of death is irrelevant to the application of § 2041. In *Estate of Bagley v. United States,* 443 F.2d 1266 (5th Cir. 1971) the decedent had possessed a testamentary power of appointment for only a "theoretical instant" during the auto crash in which she was presumed to have survived her husband, the grantor of the power. This Court held the power was in that instant legally exercisable by the decedent wife; the property subject to the power was therefore reckoned part of the decedent's estate.

In *Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970) the Ninth Circuit held that the annual lapse of a power of appointment was a taxable release of the power, even though the lapse resulted from the holder's actual mental incapacity. The Court in *Fish* noted in the margin of its opinion that the decedent had "never been adjudicated an incompetent prior to her death," 432 F.2d at 1280 n. 3, but that fact had little relevance to the body of the court's opinion, which stressed that the incidence of estate tax should not depend on the circumstances surrounding the exercise or release of powers of appointment. *See id.* at 1280.

The utilitarian grounds for limiting non–statutory estate–tax exemptions have been recognized and relied on by the Supreme Court. *Commissioner v. Estate of Noel,* 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965), arose under § 2042 of the Code; this

section requires inclusion in the gross estate of the proceeds of life insurance, if a decedent possessed at death exercisable "incidents of ownership" over the policy. Mr. Noel had taken two flight insurance policies at an airport. These documents were given to Mrs. Noel before her husband boarded a plane which crashed three hours after take–off. There was no practical opportunity for Mr. Noel to assign the policies or change their beneficiaries at the time of his death, yet the Court held that the proceeds of the policies must be included in Mr. Noel's gross estate, declaring that

> It would stretch the imagination to think that Congress intended to measure estate tax liability by an individual's fluctuating, day–by–day, hour–by–hour capacity to dispose of property which he owns. We hold that estate tax liability for policies "with respect to which the decedent possessed at his death any of the incidents of ownership" depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment.

380 U.S. at 684, 85 S.Ct. at 1241.

■ The root issue of this case is whether the adjudication of the incompetence of a holder of a power of appointment should be classed among the legally irrelevant fluctuations in the holder's "day–by–day, hour–by–hour capacity" to dispose of property, or whether such an adjudication destroys the holder's "general, legal power" to exercise incidents of ownership. While sympathy inclines to the latter view, reason counsels that simplicity and utility should prevail wherever possible in the administration of estate–tax laws. Simplicity is best served by a rule under which the adjudication of a holder's incompetence is irrelevant to estate–tax liability, unless the holder's estate can show that *all* exercise of a power on the holder's behalf, by any person in any capacity, is barred by the adjudication.

The Tax Court held that Mrs. Gilchrist's power was no longer taxable, because her legal incompetence affected the manner in

---

**2.** *Jackson v. United States,* 376 U.S. 503, 507 · 09, 84 S.Ct. 869, 871–72, 11 L.Ed.2d 871 (1964).

which the power could be exercised. This holding followed a survey of Texas law to determine whether Mrs. Gilchrist's guardians could "substitute their judgment" for hers in exercising the power. Concluding that they could not, the Tax Court held that Mrs. Gilchrist's general power of appointment had been transmuted by the declaration of her legal incapacity into one limited by the "ascertainable standards" imposed on her guardians by Texas law. 69 T.C. at 18–19.

■ It is not beyond cavil that the "prudent man" standard of action imposed on guardians by Texas law is, as the Tax Court concluded, an "ascertainable standard" in the everyday sense; more importantly, the Tax Court erred in its interpretation of this statutory phrase. Under Treasury Regulation § 20.2041–1(c)(2), 23 Fed.Reg. 4529, 4560 (1958), as amended, 26 Fed.Reg. 11861 (1961), "[a] power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in items of his needs for health, education, or support. . . ." The statute and the regulation[3] both refer to ascertainable standards imposed on the holder's exercise of the power by the terms of the instrument creating the power–not to standards imposed on guardians by local law. A contrary interpretation would make § 2041 what Justice Frankfurter has termed the "victim of conflicting state decisions on matters relating to local concerns and quite unrelated to the single uniform purpose of federal taxation." See Estate of Rogers v. Helvering, 320 U.S. 410, 414, 64 S.Ct. 172, 174, 88 L.Ed. 134 (1943).

■ The rule that state law defines the type of property interest held by a decedent is well established. See, e. g., Keeter v. United States, 461 F.2d 714, 717 (5th Cir. 1972); Estate of Vardell v. Commissioner, 307 F.2d 688, 692 (5th Cir. 1962). This case does not call that rule into question. State law creates property interests but federal law determines which incidents of owner-

ship are taxable. See Morgan v. Commissioner, 309 U.S. 78, 80–81, 60 S.Ct. 424, 425–26, 84 L.Ed. 585 (1940); Keeter, supra. A federal rule should determine which state–created powers of appointment are "general" and taxable. Cf. Estate of Rogers, supra, 320 U.S. at 414–15, 64 S.Ct. at 174 (decided under 1932 Revenue Act).

Not surprisingly, the Service's own interpretations of § 2041 favor taxation of an incompetent's appointive powers. Revenue Ruling 55–518, [1955–2] C.B. 384, 385 noted a distinction between "existence of a power and the capacity to exercise it," and held that possession of a power at death, rather than its exercise before death, is what is cumbrously styled the "taxable event." Under this ruling, the continuing existence of an incompetent's power is shown by the possibility of its exercise by a court or guardian. Id. The service later harmonized § 2041 with § 2056 (martial estate–tax deductions) of the Code by declaring that a surviving spouse's legal incapacity to exercise a testamentary power of appointment was irrelevant to the application of either section, unless legal capacity is by the terms of the power a condition of its exercise. Revenue Ruling 75–350 [1975–2] C.B. 367, 368.

Treasury Regulation § 20–2041–3(b), 23 Fed.Reg. 4529, 4562 (1958), echoes this emphasis on the terms of the grant of a power:

[A] power which by its terms is exercisable only upon the occurrence of an event or a contingency which did not in fact take place . . . is not a power in existence on the date of decedent's death.

In light of the clear legislative intent to tax the existence and not the exercise of post–1942 powers, these rulings and regulations seem reasonable and persuasive.

Against the weight of judicial and executive precedent urging a clear–cut test of taxability of powers held by incompetents stand the recent cases of Finley v. United States, 404 F.Supp. 200 (S.D.Fla.1975), vacated on jurisdictional grounds, 612 F.2d

3. A treasury regulation incorporating a long–standing executive construction of a tax statute carries considerable weight. Bingler v. John-

son, 394 U.S. 741, 749–51, 89 S.Ct. 1439, 1444–45, 22 L.Ed.2d 695 (1969); Kurzner v. United States, 413 F.2d 97, 112 (5th Cir. 1969).

166 (5th Cir. 1980) and *Williams v. United States*, 43 A.F.T.R.2d 1254 (W.D.Tex.1978), on appeal, No. 78–3797 (5th Cir.) (decision pending). *Finley*, cited by the Tax Court in its decision in the present case, now lacks precedential force; *Williams* follows rather than supports the Tax Court's reasoning in the present case.

▪ Lest reversal of the Tax Court's judgment seem inequitable, it is noted that under what it terms the "Texas–style construction" given Mr. Gilchrist's will by the Tax Court, Mrs. Gilchrist held an unrestricted power to consume or sell her husband's property. 69 T.C. at 10–11. This power was unimpaired from the time of Mr. Gilchrist's death in 1960 until the declaration of Mrs. Gilchrist's incompetence in 1971. From 1971 until Mrs. Gilchrist's death in 1973, the power, although somewhat limited by Texas law, was held by Mrs. Gilchrist's guardian. It was the nonexercise of this power which resulted in the inclusion of the property subject to it in Mrs. Gilchrist's estate. Under the Revenue Code whether this nonexercise was purposeful or neglectful is irrelevant. This power lay with Mrs. Gilchrist's guardians at the time of her death, and is therefore taxable.

Reversed and remanded.

## II. THE REID CASE

### The Incompetence Question

This case, although governed by a different section of the Revenue Code than *Gilchrist*, raises similar questions regarding the inclusion in a gross estate of property in which an incompetent had held incidents of ownership at the time of death.

In 1955 Mrs. Reid established an irrevocable trust which required the trustee to establish separate special trusts for the benefit of Mrs. Reid's issue. The trust instrument allowed the trustee discretion to accumulate or distribute income from each separate trust and to invade the corpus of the trusts for distribution among its beneficiaries.

Under the terms of the trust, set forth in part in the margin,[4] Mrs. Reid as settlor reserved the right to appoint a successor to any resigning trustee. The trust instrument did not explicitly bar the settlor from naming herself successor trustee in the event of a trustee's resignation. Several years after the creation of the trust, the original trustee, a Dallas bank, did resign and was replaced by one George Smith.

▪ In January of 1972 Mrs. Reid was declared mentally incompetent by a Texas Court; in November of that year she died. This case raises the question whether the property subject to the 1955 trust was includable in Mrs. Reid's gross estate under I.R.C. § 2036. This section provides in pertinent part that a decedent's gross estate shall include the value of property transferred by a trust under which the decedent retained "the right . . . to designate the persons who shall possess or enjoy the property or the income therefrom." *Id.* § 2036(a)(2). A settlor's retention of the power to accumulate or distribute trust income and corpus at his or her discretion results, by virtue of § 2036, in the inclusion of the trust property in the settlor's gross estate. *United States v. O'Malley*, 383 U.S. 627, 631–32, 86 S.Ct. 1123, 1126, 16 L.Ed.2d 145 (1966); *Struthers v. Kelm*, 218 F.2d 810, 813–14 (8th Cir. 1955) (both decided under I.R.C. § 811 (1939), predecessor of the present § 2036).

---

4. "TENTH: No bond or surety shall be required of the original Trustee of each trust hereunder or of any successor Trustee appointed as hereinafter provided.

"The Trustee may resign as Trustee from the trusts hereby created at any time by giving thirty (30) days' written notice delivered in hand or by registered mail to the Settlor, or, if the Settlor has deceased, to the beneficiaries then entitled to the income. The person or a majority of the persons of full age to whom notice is thus given may appoint a successor Trustee by a writing endorsed hereon or annexed hereto or, if no such appointment is made within the same thirty (30) days, the resigning Trustee itself shall so appoint a successor. Any succeeding Trustee shall have all the powers conferred upon the original Trustee."

The Tax Court, following its decision in *Gilchrist,* held that Mrs. Reid's incompetence effectively barred her and her guardian under local law from naming themselves trustee in the event of a trustee's resignation, thus removing the trust property from § 2036's requirement of inclusion in the gross estate. 71 T.C. 816, 822–23 (1979). The Tax Court therefore did not reach the questions whether Mrs. Reid had in fact intended to reserve the power to appoint herself trustee, and (as preliminary to that determination of fact) whether the trust indenture was so ambiguous that extrinsic evidence of the settlor's intent was admissible.

Under Treasury Regulation § 20.2036–1(b)(3), 23 Fed.Reg. 4529, 4552 (1958), *as amended* 25 Fed.Reg. 10869 (1960), it is immaterial to the question of the existence of a decedent's taxable § 2036 power whether the power was exercisable only in conjunction with another person. The capacity in which the decedent or such other person could exercise the power is likewise irrelevant under the regulation. As noted in the *Gilchrist* case, statutory interpretations contained in Treasury Regulations of such comparatively ancient provenance are accorded great weight. The utilitarian considerations undergirding such clear–cut rules have been outlined above and need not be repeated here. Parenthetically, we note that only this final aspect of the *Gilchrist* opinion has application in *Reid.*

Adhering to the language of the regulation reduces the relevant legal question to this one: did Mrs. Reid's putative power of self–appointment survive her adjudication of incompetence? Or more specifically, was the power exercisable in any capacity by Mrs. Reid or by her guardian? Answering this question requires reference to state law. This is simply an application of the

rule noted in *Gilchrist*—that state law *creates* property interests which are *taxed* according to federal law.

In its exploration of relevant state law, the Tax Court cited *Weatherly v. Byrd,* 566 S.W.2d 292 (Tex.1978), for the proposition that "the discretionary right to appoint oneself as successor trustee . . . is a personal right which does not vest in a guardian upon his appointment." 71 T.C. at 823. The cited Texas case dealt with a guardian's power to revoke a revocable trust in a settlor–ward's stead. The Texas Court did hold that such a "personal" power does not vest in a guardian, but further held that such a power was exercisable by a guardian acting with the authorization of a court of competent jurisdiction. 556 S.W.2d at 293.

*Weatherly* is the Texas case most analogous to the present one and suggests that Mrs. Reid's guardian could have appointed himself trustee of the 1955 trust property.[5] The only other pertinent Texas case cited by the Tax Court is *In re Guardianship of Estate of Neal,* 406 S.W.2d 496 (Tex.Civ.App.) *writ of error refused, n. r. e.,* 407 S.W.2d 770 (Tex.1966). *Estate of Neal* dealt with the power of a guardian under Texas law to make gifts from the estate of his or her ward. The case has little relevance to the question of a guardian's capacity to exercise a power of self–appointment as trustee of a trust established by a ward: the trustee's discretion, unlike that of the would–be donor–guardian, is limited by the terms of the settlor's own trust indenture. In short, this Court has been directed to no Texas statute or case which barred Mrs. Reid's guardian from exercising any power of self–appointment which Mrs. Reid as settlor might have reserved. If that power was reserved it continued to exist under Texas law, at least as existence of a power

5. We cannot gauge the likelihood that a Texas court would have approved the appointment of Mrs. Reid's guardian as trustee of the 1955 trust. (Mrs. Reid's guardian, Walter Reid, was the beneficiary of one of the special trusts created by the 1955 indenture.) All that is relevant to federal estate–taxation is that a Texas court *could* have approved such an appointment.

If, under Texas law, Mr. Reid's legal and equitable interests in the Walter Reid special trust would automatically have merged, this would argue against inclusion of the value of the assets of that special trust in Mrs. Reid's estate under § 2036. Such a merger would have destroyed any interest that Mrs. Reid, or her guardian *qua* guardian, held in the special trust property.

is determined for federal estate–tax purposes.

■ The Tax Court has noted an exception to § 2036(a)(2)'s rule of inclusion: if the right to designate who shall enjoy property or the income from it is subject to an "ascertainable standard" of exercise, that property is not includable in the estate of the holder of the right. *Estate of Cutter*, 62 T.C. 351, 354 (1974). This "ascertainable standard" exception is not statutory, as is the similarly–styled exception to § 2041 noted in *Gilchrist*; it is not necessary to consider whether the limits of that exception noted in *Gilchrist* are applicable here. For although it could be said that Texas law imposes some standards on a guardian's exercise of a ward's power of "self"–appointment as trustee of a trust, those standards govern the validity of the *appointment*; they do not affect the scope of the trustee's powers to accumulate or distribute property once appointed. Those powers are in this case set by the terms of the trust, and are not limited by any standards ascertainable within that instrument or imposed by state law.

*Questions of Fact*

The Tax Court, basing its decision on Mrs. Reid's incompetence to serve as trustee at the time of her death, did not reach the question whether Mrs. Reid had actually reserved the power to name herself trustee of the 1955 trust. To iterate: Mrs. Reid did not expressly reserve or renounce the power to name herself successor trustee under the 1955 trust. Her estate contends that it was her intent to eschew any such power.

■ Whether the settlor of a trust has in fact reserved any of the powers enumerated in § 2036 is determined by the law governing the trust. *Durst v. United States*, 559 F.2d 910, 911 (3d Cir. 1977). Under Texas law, extrinsic evidence is admissible to construe an ambiguous trust instrument by ascertaining the settlor's true intent. *E. g., Coffee v. William Marsh Rice Univ.*, 408 S.W.2d 269, 273 (Tex.Civ.App. 1966), *writ of error ref., n. r. e.* The Commissioner argues that under a federal rule

of law, a trust indenture is not ambiguous in describing the settlor's right to serve as trustee, if the indenture does not expressly bar such service. The Commissioner relies on *Mathey v. United States*, 491 F.2d 481 (3d Cir. 1974) (en banc). *Mathey* does not support this reliance; in *Mathey* the settlor of the subject trust had retained the power to change trustees. In such a case, silence on the settlor's power of self–appointment is more telling than is Mrs. Reid's in the present case.

■ The ambiguity of the 1955 trust instrument is such that a Texas court would be likely to admit extrinsic evidence of the settlor's intent concerning powers of self–appointment. The Tax Court heard much extrinsic evidence on this matter but did not rule on its admissibility, weight, or credibility. The Tax Court's judgment is reversed and remanded for such rulings, and for the determination whether Mrs. Reid had reserved a power of self–appointment as trustee of the 1955 trust.

REVERSED and REMANDED.